### No. 22,153.

THE STATE OF KANSAS, ex rel. THURMAN HILL, as County Attorney of Montgomery County, *Plaintiff*, v. WILLIAM SINCLAIR, *Defendant.*

#### SYLLABUS BY THE COURT.

1. SUPERINTENDENT OF CITY SCHOOLS—*Manner of ·Election—Waiver of· Rule Requiring Ballot.* A board of education in a city of the first or second class may by common consent waive its rule requiring an election of a superintendent to be held by ballot, and may signify its choice by call of the members and the recording of their votes.

2. SAME—*Time for Election.* The election of a superintendent at a meeting of the board called for that purpose will not be held invalid merely because the board had previously adopted a rule fixing a regular and later meeting as the time for selecting a superintendent.

3. SAME—*Tenure of Office—Definite and Certain.* Prior to 1911 the act relating to boards of education in cities of the first and second class provided that the superintendent of public schools "shall hold his office during the pleasure of the board." (Gen. Stat. 1909, § 7607.) By section 4 of chapter 269 of the Laws of 1911 the act was amended, and the tenure of office of the superintendent was fixed at "a term of one or two years, as the board may choose," the term to begin on the first Monday of August. A rule or by-law adopted by a board of education in 1913 to the effect that the term of office of the superintendent "shall continue during the pleasure of the board," being in conflict with the statute, is void.

4. SAME—*A Public Officer—Statutory Method of Removal.* A superintendent of public schools is a public officer within the meaning of that term as used in the statute of *quo warranto* (Gen. Stat. 1915, § 7596), ,and he is also an employee of the board; and the board has power to remove him as an employee "for incompetence, negligence, or immorality, after notice and a fair hearing." (Gen. Stat. 1915, § 9072.)

5. SAME—*Attempted Removal Void.* An attempt by the board of education to remove a duly elected superintendent of public schools without notice and a hearing, on the general ground that he is not in harmony with the board and, therefore, is not, in their opinion, a suitable person to have the management and control of the schools, is void because the charge states no statutory ground for removal, and for the

further reason that the incumbent of the office is entitled to notice and a fair hearing.

Original proceeding in quo warranto. Opinion filed September 26, 1918. Judgment for the plaintiff.

*Thurman Hill,* county attorney, and *Charles D. Ise,* of Coffeyville, for the plaintiff.

· *A. M. Etchen,* and *Bert Van Leuven,* both of Coffeyville, for the defendant.

The opinion of the court was delivered by

PORTER, J.: In this original proceeding William Sinclair's right to hold the office of superintendent of schools in the city of Coffeyville is involved, and in determining that question it becomes necessary to inquire into the right of Thomas F. Scott to the same office.

Mr. Scott was the superintendent of schools for the year 1917-1918, having been duly elected for a period of one year. On February 14, 1918, at a special meeting of the board of education, a motion was adopted that he be reëlected for the coming year and his salary fixed at $2,600. He was present and accepted the reappointment. The rules and regulations adopted by the board fixed the regular meeting in March as the time for the election of a superintendent, and at the regular meeting on March 4 Mr. Scott was formally elected to the office for the year beginning August 1, the roll being called and the members voting, five for, and one against, his election.

At a called meeting of the board June 12, a resolution was presented asking him to resign, on the ground that he was out of harmony with the majority of the members of the board, was arbitrary in his dealings and relations with it, and that his influence was regarded by the board as injurious to the school system. Mr. Scott asked if the statements in the resolution constituted a charge against him; the president of the board replied: "If adopted it is." Mr. Scott asked by whom the charge was made, and the president said: "It will be the action of the board one way or the other." The resolution was put to vote by acclamation, and there were five votes for, and none against, its adoption. Mr. Scott then made the statement: "I am here

to serve under my contract and expect to stay by it"; the president of the board replied: "You are out as far as we are concerned until you put yourself in again." The meeting then adjourned.

At the regular meeting July 1, the matter came up for discussion, and a resolution was presented to depose Mr. Scott from the office. The minutes of this meeting do not recite how the resolution was worded, but it is said that one of the grounds urged for removing him from the office was that his election had not been by ballot as the rules of the board required. In the discussion two of the members stated they believed there should be a change, but they considered the election in February as made in good faith and did not feel inclined to base their objection on a technicality. The roll was called, and three members voted for, and three against, and the motion was declared lost. The meeting then adjourned.

On July 16 there was a called meeting of the board. The rules and by-laws required 24 hours' notice of called meetings, but all the members were present and waived any defect of notice. The chairman stated that the purpose of the meeting was to consider and take action upon the matter of superintendent. A motion was made and seconded that Thomas F. Scott be deposed, effective July 31, and that the office be declared vacant. Mr. Scott was present and stated he had certain legal rights, and asked the grounds upon which he was to be removed, calling attention to the law which provides certain grounds of removal—immorality, incompetency and neglect of duty—and notified them that he stood ready to answer any of these charges. The presiding officer said: "The board had no statement to make but that they had made up their minds." One of the members demanded that the charges be made specific and in writing, but the president ruled him out of order. The call of the roll showed five votes for, and one against, the motion. At a called meeting July 31, the board elected Mr. Sinclair superintendent for one year, one member declining to vote on the ground that the schools already had a superintendent who had not been properly discharged and against whom no charge of immorality, incompetency, negligence or neglect of duty had been preferred.

If Mr. Scott was duly elected to the office for the current

year and has not been legally deposed, it necessarily follows that the election of the defendant was without authority and void.

The defendant raises these contentions: First, Mr. Scott was not duly elected at the meeting on the 14th of February, because that was a special meeting; second, that he was not chosen by ballot; and, third, that the rules and regulations of the board, which it is said constitute a part of the contract entered into with Mr. Scott, expressly provide that the term of office of the superintendent shall continue during the pleasure of the board. These defenses are based upon section 9 of the rules and by-laws, which reads:

"At the regular meeting in March of each year the board of education shall elect, by ballot, a superintendent of schools whose term of office shall continue during its pleasure."

Conceding, for the purposes of the argument, that the election of Mr. Scott at the February meeting was void because not made at the time provided for by the rules of the board, he was elected again at the regular meeting held on March 4. As to the second proposition, it is true that the word "ballot" in its primary and technical sense means a ball or ticket with some designation to show the choice of the person casting a vote. (See 1 Words and Phrases 680.) Numerous authorities might be cited in which it has been held that a constitutional provision that certain elections shall be held by ballot has been construed in its technical sense to mean by the casting of a paper ballot prepared by printing or writing thereon to show the voter's choice; and it is also true that in the primary sense in which the word was used it meant a secret method of voting at an election. It would be carrying technicalities to the extreme, however, to hold that a board of education might not by common consent waive its rule requiring an election of a superintendent to be held by ballot, and signify its choice by a call of the members and the recording of their votes. It would hardly do to declare the election or choice of a superintendent of public schools void because the members of the board of education announced their choice as their names were called, the vote being recorded by the clerk; and this was the method followed when Mr. Scott was employed as superintendent, both at the special meeting in February and the regular meeting in

March. To hold otherwise might raise a question as to the validity of the title by which many superintendents of public schools hold their office.

The word "ballot" has been given by some courts a broader meaning to signify that by which the right of suffrage is exercised, and in *Bourland v. Hildreth,* 26 Cal. 161, 194, it was held that a ballot means "The expression of choice by or through a ballot, or by outcry, or any other particular means by which the choice of the voter may be lawfully known or communicated." When United States senators were elected by the joint houses of the legislature, the act of voting was referred to in common parlance as taking a ballot for senator, although the statute provided that the vote should be by a roll call, doubtless for the reason the legislature deemed it wise that the choice of each member voting should be made a matter of record.

Nor would it do, we think, to say that the election of a superintendent at a meeting of the board called for that purpose should be held invalid merely because the board had previously adopted a rule fixing a regular and later meeting as the time for selecting a superintendent. Circumstances might arise which would require the election of a desirable person as superintendent before the regular meeting, in order to secure his acceptance. The statute (Gen. Stat. 1915, § 9074) merely provides "that the board of education in cities of the first and second class, at such time as they may deem expedient shall elect a superintendent of schools, . . . for a term of one or two years, as the board may choose, and whose term shall begin on the first Monday in August."

The main contention, however, is that the provision in section 9 of the by-laws and regulations adopted by the school board of Coffeyville, which declares that the term of office of the superintendent "shall continue during its (the board's) pleasure," became a part of the contract by which Mr. Scott was employed or chosen as superintendent, and that the board has the authority and right to discharge him at its pleasure. This contention is not sound. The powers of the board of education are defined by the statute, and among these is the power to "make all necessary rules . . . of the board, subject to the provisions of this act and the laws of this state." (Gen. Stat. 1915, § 9108.) Again the board is given "power to

adopt rules and regulations for the carrying out of the purposes of this act not in conflict therewith." (Gen. Stat. 1915, § 9124.) We have already referred to section 9074 of the General Statutes of 1915, which declares that the superintendent shall be elected "for a term of one or two years, as the board may choose, and whose term shall begin on the first Monday in August." Prior to 1911 the act provided that the superintendent "shall hold his office during the pleasure of the board." (Gen. Stat. 1909, § 7607.) In 1911 the act relating to boards of education in cities of the first and second class was amended, and the tenure of office of the superintendent of schools was fixed at " a term of one or two years, as the board may choose, and whose term shall begin on the first Monday in August." (Laws 1911, ch. 269, § 4.) · It will not be necessary to cite authorities to show that the rules and regulations adopted by the board of education must harmonize with the statutes. Manifestly, as was said in the argument, the change in the law was procured through the influence of the teachers' profession in Kansas, and because of the uncertainty which formerly existed in the tenure of office held by a superintendent of public schools. The rules, by-laws and regulations for the government of the board of education of Coffeyville were amended in 1913, and apparently the provision that the term of office of the superintendent "shall continue during the pleasure of the board" was inadvertently readopted from the rules in force before the statute was amended. However that may be, it must be held that the employment and election of Mr. Scott was for a term of one year.

The remaining question is whether the act of the board in attempting to depose him was authorized and valid. While the superintendent of public instruction holds a public office within the meaning of the words "public office" as used in the statute of *quo warranto* (Gen. Stat. 1915, § 7596), he is, in a sense, an employee of the board. He is employed by a contract fixing his compensation or salary, although his employment must be by an election of the board. The board of education in cities of the first and second class is given authority at any special meeting to "remove any of its employees for incompetence, negligence, or immorality, after notice and a fair hearing of the person so charged." (Gen. Stat. 1915,

§ 9072.) There is no express provision for removing a superintendent of public schools. While the superintendent is a public officer, the statute, we think, should be construed to hold him an employee within the meaning of section 9072, and removable by the board for incompetency, negligence, or immorality, after notice and a fair hearing. In the present case the board attempted to remove Mr. Scott on the general ground that he was not in harmony with the board, and for that reason was not, in their opinion, a suitable person to have the management and control of the schools. The charge is too general in its nature. If true, it would not necessarily follow that the superintendent is incompetent. Through no fault of its own, a clock which keeps the time correctly is not in harmony with one which fails in this important quality. In any event, before the board could lawfully remove the superintendent, specific charges in writing should have been presented against him, as the statute contemplates, and upon these charges he should have been given a fair hearing, with an opportunity to present any defense he might have. It is conclusively shown by the record that the board attempted to remove him from office upon a general charge, which, if held sufficient, would authorize a board of education to remove the superintendent at any time it became dissatisfied with its choice, or desired to get rid of him and employ some one else. Because it is so manifest that the board was proceeding upon a mistaken notion, that by reason of the provision in its by-laws it had authority to remove the superintendent at its pleasure, it seems unnecessary to attempt to construe the general charge as including the charge of incompetency. If, notwithstanding the general nature of the charge, there had been a fair hearing and a finding of facts upon sufficient evidence showing the existence of some of the statutory grounds for removal, the defendant might be heard to say that the defect in the indictment became immaterial; but we have no such case before us. The superintendent repeatedly, not only demanded that the charges be made specific and be made to comply with the statute, but that he be given a hearing and an opportunity to defend. These statutory rights were denied him on the theory that the board possessed authority to remove him at pleasure.

Because there was no vacancy in the office of superintendent at the time the board attempted to elect William Sinclair, he has no right to hold the office, and judgment will go for the plaintiff.