KING W. MANSFIELD *v*. ALBERT T. SCULLY.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and WYNNE, Js.

Argued December 14—decided December 28, 1942.

*David Goldstein*, with whom, on the brief, was *Alvin W. Peck*, for the appellant (defendant).

*Warren F. Cressy*, with whom, on the brief, was *Warren F. Cressy, Jr.*, for the appellee (plaintiff).

MALTBIE, C. J.   The plaintiff and defendant were the respective candidates of the Republican and Democratic parties for the office of first selectman in the town of Westport.   At the election in October, 1942, the defendant was declared elected as the result

of the count of votes, which gave him 1555 votes as against 1538 for the plaintiff.  Of these votes, thirty-two were cast for absentee electors under the provisions of § 168c of the 1935 Cumulative Supplement to the General Statutes as amended by § 108f of the Supplement of 1941, the material portions of both of which are quoted in the footnote.[1]  The plaintiff

[1] *ABSENTEE VOTING.*  (a) *Any* qualified elector of this state who shall be absent from the state during the entire day of any national or state election, or who, because of illness or physical disability, shall be unable to appear at the polling place on such date, or any qualified elector of this state who shall be absent from the state during the entire day of any town, city or borough election because of his being in active service with the army, navy, marine corps or coast guard of the United States, may cause his vote to be cast at such national or state election, or such town, city or borough election, in the manner and subject to the conditions hereinafter stated.

(b) Any elector who expects so to be absent . . . may apply in person or by mail to the town clerk of the town in which he is qualified to vote, not more than three months before the day fixed for such election, for a blank form of affidavit and voting instructions, and such town clerk shall deliver such form to him or to his authorized messenger or forthwith mail it to him at the address given in his application with an envelope indorsed as stated in subsection (f). . . .

(c) The blank form of affidavit and voting instruction shall be in the form prescribed by the secretary of the state, who shall cause to be printed a sufficient supply of such blanks and furnish to each town clerk such number as he may request or as the secretary shall think sufficient.  It shall contain blank spaces for the full name of the applicant. . . ; it shall also state . . . that he has not been paid or promised, and that he does not expect to receive, any reward or compensation for his vote.  Such blank form shall also contain instructions to the voter for casting his vote.  Upon such form shall be printed the following directions to the voter: If you wish to vote a straight party ticket use form (1), inserting in the blank the name of the party whose ticket you wish to vote, and do not mark or use form (2) or (3). . . .

(d) . . . Said printed form shall also contain space for the signature of the voter and the certificate of the magistrate before whom it is subscribed and sworn to.

(e) The voter, having procured said form, shall fill out the blanks

brought a petition to contest the election to the Superior Court. It held that the thirty-two absentee

therein which state his citizenship, right to vote and residence and the other facts required by subsection (c), and shall fill up such of the blanks for instructions as shall clearly state the manner in which he wishes his vote to be cast, and shall sign and swear to such statements and instructions before an official authorized to administer oaths. . . . Such magistrate . . . shall then fill out his certificate in the form following. . . .

Then appeared before me .................................... personally known or satisfactorily identified to me as being the person bearing such name, and signed and swore to the above affidavit and voting instruction; and I certify that I did not solicit or advise such voter to vote for or against any political party, or for or against any candidate or measure, and that I have not disclosed and will not disclose to any person, unless required to testify, thereto in some competent court, how such voter instructed his vote to be cast.

(f) Such voter shall then mail such instructions, postpaid, to the town clerk of the town in which he is entitled to vote, inclosed in an envelope indorsed on the outside, "Voting instructions mailed by an absentee voter". . . . The town clerk shall retain such envelope, and shall not open the same; but, on the day of such election, prior to the opening of the polls, shall deliver such envelope, unopened, together with his affidavit as hereinafter provided, to the presiding moderator of the election. . . . Such moderator shall appoint two electors of such town, known by him to be persons of integrity and members of different political parties, to cast the votes of all such absentee voters. If such absentee instructions shall be so numerous as to make it impracticable for two persons to cast all the votes represented thereby, such moderator shall appoint as many other groups of two electors having the qualifications above stated as shall be needed to cast all the absentee votes. Each elector so appointed shall be sworn to carry out faithfully the instructions of each voter, and that he will not disclose to any one unless required to testify thereto in some competent court, how any such absentee voter instructed his vote to be cast, or how it was cast. The electors so appointed shall then open the envelopes . . . and . . . shall then cause the name of each voter to be checked and the word "absentee" written in connection with the check, and shall then mark and cast the ballot, or cast the vote on the voting machine in the proper polling place, so as to carry out the expressed desire of the voter. . . . If the instructions shall be in any respect uncertain or conflicting, they shall submit the question raised thereby to the moderator and cast the vote in accordance with his decision and such

votes were illegally cast and, as their rejection reduced the vote of the defendant to 1523, it declared the plaintiff to have been elected first selectman. On this appeal by the defendant, the question is whether the trial court was correct in holding that the thirty-two absentee votes were improperly allowed to be cast for him.

According to the finding, Willard R. Williams was chairman of the town committee of the Democratic party in the town of Westport. Before the day of the election he talked with various voters, who expressed their belief that they would be absent from Westport on that day. Thirty-two of these voters, a great many of them Democratic party workers, candidates and former office holders, instructed him to procure from the town clerk forms of affidavit and voting instructions for absentee voting, that they might execute them. Pursuant to these instructions, Williams procured thirty-two applications and forwarded them to the voters, who executed them, appointing him as

moderator shall indorse on such instruction sheet such question and his decision thereon. Each group of two shall then place all the instruction papers received by it in an envelope, seal the same and deliver it to the moderator, who shall return it to the town clerk, who shall preserve it until the time for any election contest has passed and then destroy it with its contents. Such envelope shall not be opened by any person except by order of a court of competent jurisdiction.

(h) Any person who shall make any false statement in his affidavit or instruction paper shall be guilty of perjury which shall be deemed to have been committed in the town to which such instruction paper was mailed, and shall be subject to the penalties provided in section 6163. Any person who shall execute such an instruction paper for the purpose of informing any other person how he votes, or shall procure any instruction paper to be prepared for such purpose, and any town clerk, moderator or elector appointed to cast absentee votes who shall wilfully disclose to any person how any voter instructed his vote to be cast, or how it was cast, or any person who shall wilfully violate any provision of this section, shall be subject to the penalties provided in section 674.

their messenger for the purpose of procuring blank forms of affidavit and voting instructions. These were delivered to Williams. He caused the blank spaces in the forms to be typewritten in, with light blue type, including the instructions as to how the votes were to be cast, leaving only the signatures to be filled in by the voter and the affidavit by the authority administering the oath. On thirty of the certificates of instruction, Williams made a small pencil check mark opposite the line provided for the signature of the voter. The instructions all were that the voters desired to vote the straight Democratic ticket. Twenty-eight of the instruction blanks were mailed or delivered by Williams to the absentee voters, who signed and swore to the certificates before proper authority. The remaining four were executed by the voters in the presence of Williams, who administered the oath. The certificates of instruction were placed in sealed envelopes by the absentee voters and mailed to the town clerk in that condition. On the day of the election, they were delivered to the moderator. One of the electors appointed by him to cast absentee votes protested against their being cast when the envelopes were opened, on the ground that the fact that the certificates of instruction were made out in blue type made it obvious that they were not filled out personally by the absentee voters. The moderator ruled, however, that the votes should be cast, although he did not indorse his decision upon any of the certificates of instruction. The thirty-two votes were then cast on the voting machines in use in the town.

The trial court ruled that the votes should not have been cast because the instruction blanks were filled out, not by the voter personally, but by Williams before they were executed; that the pencil check marks opposite the place where the voter was to sign con-

stituted such a mark or device as is prohibited by the provisions of § 606 of the General Statutes, although this in itself would not have rendered the votes invalid; but that the use of the blue type was such a mark or device as would invalidate the votes.

Underlying a consideration of these rulings is the question whether the "form of affidavit and voting instructions" is to be regarded as a ballot. The forms furnished by the secretary of the state have on their backs the words "Official Ballot for Absentee Voter" and within, before the expression of desire by the voter as to how his vote is to be cast, the words "Absentee Ballot"; but of course these labels cannot change the nature of the document from that intended by the statute. The act itself seems carefully to avoid any reference to the instructions as ballots, and, in fact, distinguishes between the instructions and the ballot. It provides that the portion of the form in which the voter states how he wishes to vote shall be in this language: "I desire to vote," etc., which is not the way in which a present vote would naturally be expressed; the electors who open the envelope are sworn not to disclose to anyone how the voter instructed his vote to be cast or how it was cast; and the act provides that, after the electors appointed for this purpose have opened the envelope containing the instructions, and the name of the voter has been checked, they "shall then mark and cast the ballot, or cast the vote on the voting machine in the proper polling place, so as to carry out the expressed desire of the voter." The act clearly treats the paper as being no more than it purports to be, "instructions" by the voter as to the persons for whom he desires his vote to be cast, not by him, because he is absent, but for him by the electors appointed by the moderator. No doubt, as the plaintiff stated, a ballot may be broadly defined as

the means by which a voter expresses his choice. *State ex rel.* v. *Hill Sinclair,* 103 Kan. 480, 484, 175 Pac. 41. The absentee voter gives effective expression of his choice only when the electors appointed for that purpose cast the ballot which goes into the ballot box or operate the voting machine in conformity with his desire.

Many provisions of our election laws might be referred to which are wholly inapplicable to the instruction blanks for absentee voters, and these provisions indicate that the instruction blanks are not comprehended within the word "ballot" as there used. Perhaps the distinction between these instructions and a ballot under the election laws nowhere more clearly appears than in § 606, upon which the trial court quite largely based its decision that the votes should not be cast. This section is entitled "Improper marking or folding of ballots" and contains this provision: "If any ballot shall contain any mark or device other than as hereinbefore provided, so that the same may be identified in such a manner as to indicate who might have cast the same, or shall be folded otherwise than as delivered to the voter by the ballot clerk, the ballot shall not be counted, but shall be kept by the moderator and returned to the town clerk in the ballot box in a separate package from the ballots counted at such election." The purpose of the statute appears from its terms; it is designed to prevent a voter from giving information to some interested person as to the way in which he voted, a result which might easily come about and be put to political use if the ballot could be marked, by reason of the fact that all ballots are subjected to the scrutiny of the counters, whose appointments are of a political nature, and very likely of others, because the counting is to be done "in public meeting." General Statutes, § 615. But in the case

of the instructions given by an absentee voter, he is required to sign them and make oath to them before a designated official, to whom he must identify himself. There is no better means of identifying the person who executes the document; and no additional mark or device could add anything to the signing and acknowledgment as a means of identifying the voter. The act accomplishes the purpose of secrecy by a different method; each elector appointed to open the envelopes and cast the votes must be sworn "that he will not disclose to any one unless required to testify thereto in some competent court, how any such absentee voter instructed his vote to be cast, or how it was cast." Incidentally, § 606 provides that ballots rejected as marked shall be put into the ballot box in a separate package and returned to the town clerk in it, after it has been sealed; whereas the act before us prescribes that the instructions shall be placed by the electors who cast the votes in a sealed envelope which is to be returned outside the ballot box to the town clerk and kept by him until the time for any election contest has passed. The statute concerning marked ballots does not apply to the instructions of an absentee voter as to how he desires to vote, and the trial court was in error in holding that the pencil checks and blue type used in filling out the instructions required the rejection of the votes on that ground.

We turn to the other ruling of the trial court, that the votes should not have been cast because the instructions were "filled out" and "filled up" by Williams before sending them to the voters for them to sign, swear to and return. The general principle is that where a statute authorizes or directs an act to be done the doing of that act may be delegated to another, except where the language of the statute

or the inherent nature of the act is such as to show a contrary legislative intent. *State ex. rel. Hansen* v. *Schall,* 126 Conn. 536, 541, 12 Atl. (2d) 767; *Cuming* v. *Toms,* 7 M. & G. 29, 32, 135 Eng. Rep. R. 12, 14 L. J. C. P. (N. s.) 54; *Toms* v. *Cuming,* 7 M. & G. 88, 92, 135 Eng. Rep. R. 38, 14 L. J. C. P. (N. s.) 67; *Ludwig* v. *Corey,* 158 Ind. 582, 592, 64 N. E. 14; 1 Mechem, Agency (2d Ed.), §§ 80, 125; Maxwell, Interpretation of Statutes (8th Ed.), p. 66 et seq. While the voter must himself sign and swear to the instructions, there is nothing in the terms of the statute in question which brings the filling in of the blanks within the exception; it does not, for example, state that the voter shall "personally" fill out the blank, or that he shall do it "himself," as in the election cases of *Monks* v. *Jackson,* L. R. 1 C. P. D. 683, 689, 46 L. J. C. P. (N. s.) 162, and *Reg.* v. *Mansel Jones,* L. R. 23 Q. B. D. 29, 32. Nor do we see anything in the inherent nature of the act of filling out the blank in the instructions before they are signed which requires that it be done by the voter. Such action would be purely clerical, and it is the signature and oath which makes the document effective. Indeed to hold otherwise might well be to deny the right to vote intended to be secured by the act to one who was too ill or otherwise disabled to do more than sign and swear to the document. Nor do we see any likelihood that this method of filling out the blanks might be made the vehicle of improper influence or corruption. In this connection it should be noted that there is no penalty imposed for soliciting in behalf of a candidate unless it is done within seventy-five feet of the entrance to a polling place. General Statutes, § 612. If public policy would be better served by the voter personally filling out the blanks, the legislature may, of course, require that he do so.

The defendant seeks an addition to the finding to the effect that all the thirty-two voters requested Williams to fill out the instruction blanks before forwarding them. That they requested him to procure the blanks is not open to dispute. Whether or not they specifically requested him to fill them out before forwarding them is not of significance. If he assumed to do it in the absence of a request, their acceptance of his act in so doing by signing and swearing to them would ratify his action and have all the effect of prior authority. *Mereness* v. *DeLemos,* 91 Conn. 651, 656, 101 Atl. 8. The act provides that upon application being made to him the town clerk shall "deliver such form to him [the elector] or to his authorized messenger or forthwith mail it to him at the address given in his application," and in a bill of exceptions the plaintiff claims that, under this provision, a messenger can only be employed where personal delivery is to be made to the voter, not where he is to mail the form to him. We see no reason for such a restriction of the words of the act, and no doubt to permit the messenger to obtain and mail the blank to the voter would often serve the general convenience.

We refer to one ruling on evidence because, if the defendant was correct in his objection, there would be no ground upon which the substantive rulings of the court could be properly presented. Williams, called as a witness, was shown the instruction sheets in question and asked whether the blanks in them were filled out by him or under his direction. The ground of the objection pressed in the brief is that the examination of the instructions by him would violate the policy that secrecy should protect a voter against disclosure of the way in which he voted. If this ground of objection were sound it would prevent the contest of an election in such a situation as the one before us. But

the act itself recognizes that there may be situations where it is necessary, in the course of judicial proceedings, to disclose the instructions given by a voter as to the way in which he desired to vote, for in the oath of secrecy administered to the electors appointed to open the envelopes it is provided that they shall not disclose how the voter instructed that his vote should be cast "unless required to testify thereto in some competent court." The rule of secrecy "does not protect persons who vote illegally, from making a disclosure of how they voted. To give that rule this wide scope would be to make it shield alike the right and wrong, the honest and the dishonest. This rule is intended to protect the inviolable secrecy of an honest ballot and thus the purity of the ballot-box." *Buckingham* v. *Angell*, 238 Ill. 564, 566, 87 N. E. 285; *Black* v. *Pate*, 130 Ala. 514, 527, 30 So. 434; *Montgomery* v. *Dormer*, 181 Mo. 5, 17, 79 S. W. 913. Where, to determine whether votes in an election were legally cast, it becomes necessary to open the door to a disclosure of the persons for whom a particular voter cast his vote, the public policy of secrecy as to the individual's vote yields to the greater public policy to have in office only those men who were properly and legally elected. It was relevant and material to the issues raised in the case that Williams should testify upon the basis of the instructions. There was no error in admitting the testimony.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the petition.

In this opinion the other judges concurred.