STATE OF MISSOURI, at the Relation of STIERS BROTHERS CONSTRUCTION COMPANY, a Corporation, Relator, v. HON. WILLIAM C. HUGHES, HON. EDWARD J. McCULLEN and HON. LYON ANDERSON, Judges of the St. Louis Court of Appeals.—No. 39596.— 190 S. W. (2d) 880.

Court en Banc, November 5, 1945.

Rehearing Denied, December 3, 1945.

*Robert N. Jones* and *Arnot L. Sheppard* for relator.

*Moser, Marsalek & Dearing* and *J. C. Jaeckel* for respondents.

664

 TIPTON, J.—Certiorari to respondents as Judges of the St. Louis Court of Appeals to review their decision in the case of Lawton-Byrne-Bruner Insurance Agency Company v. Stiers Brothers Construction Company, found in 186 S. W. (2d) 480, wherein that Court affirmed a judgment in an action to collect premiums due on two insurance policies, issued to a corporation styled S. C. Mullgardt & E. C. Hartman, Inc.

Pursuant to Article V, Section 10 of the Constitution of Missouri, adopted February 28, 1945, the parties have briefed this cause as an original appeal; we will, therefore, decide this case on its merits. Lawton-Byrne-Bruner Insurance Agency Company will be referred to as plaintiff and relator Stiers Brothers Construction Company as defendant throughout this opinion.

We have carefully examined the record and find that respondents' opinion has accurately stated the facts, and we adopt the same without quotation marks.

The action was brought in two counts, the first for the recovery of the sum of $275.60 and interest, being the premium due upon a policy of public liability insurance; and the second for the recovery of the sum of $1,212.56 and interest, being the premium due upon a policy of workmen's compensation and employers' liability insurance.

Upon a trial to a jury, a verdict was returned in favor of plaintiff, and against defendant, on both counts of the petition, for the aggregate amount of $1,749.33. Judgment was entered in accordance with the verdict.

It is enough to say of the issues in the case that plaintiff's cause of action was bottomed upon the idea that the Mullgardt-Hartman corporation, in procuring the policies of insurance in question, was acting for defendant as an undisclosed principal so as to have made defendant liable for the premiums on the policies. Defendant's theory, on the other hand, was that the relationship between it and the Mullgardt-Hartman corporation was not one of principal and agent, but solely of creditor and debtor, and that it was therefore not liable for the premiums on the policies which plaintiff's assignor, Hartford Accident & Indemnity Company, had issued to the Mullgardt-Hartman corporation.

At the trial below defendant stood on plaintiff's case, and now argues, as a matter of chief insistence, that the court was in error in refusing its request for a directed verdict in its favor.

The testimony revealed that the Mullgardt-Hartman corporation was organized in June, 1937, with a capital stock of $1,600 divided into sixteen shares, of which E. C. Hartman owned ten, S. C. Mullgardt owned five, and a Mr. Burten owned one. Mullgardt was the president of the corporation, Burten the vice-president, and Hartman the secretary and treasurer. The corporation was organized to do general construction work, and for the first year of its existence, or up until the time that it entered into contractual relations with defendant, Stiers Brothers Construction Company, operated on a restricted basis, and did nothing but small jobs consisting mostly of alterations and the like which its limited capital permitted it to undertake.

Concluding that if the corporation's condition was to be improved, it was essential that additional capital be secured, Mullgardt spoke to one Meyer, a salesman in the employ of defendant, who suggested that defendant might be interested in entering into some sort of an agreement with the Mullgardt-Hartman corporation, and later made an appointment for Mullgardt to confer with Mr. L. J. Stiers, the president of defendant company, regarding the possibility of such an arrangement.

After a couple of meetings between Mullgardt and Stiers, a plan was formulated for putting the proposal into effect; and on April 1, 1938, a written contract was executed between the two corporations, by the terms of which after reciting that the Mullgardt-Hartman corporation was engaged in the construction and erection of buildings and other structures and that defendant was desirous of obtaining the stock of a corporation so engaged, it was agreed that the Mullgardt-Hartman corporation should transfer all of its stock to defendant, covering no tangible assets, but free and clear of any and all encumbrances; that Mullgardt and Hartman would be employed to continue the management of the Mullgardt-Hartman corporation at a salary of $150 each per month, plus $50 each per month for the use of automobiles in the prosecution of the contemplated construction business, and plus 5% each of any and all net profits realized from the undertaking; that all bidding and construction work should be done by the Mullgardt-Hartman corporation in its own name, but with the same backed, financed, or underwritten by defendant until such time as the option for the termination of the agreement should be exercised by either of the parties thereto; and that upon thirty days' notice to the other, either party might elect to terminate the agreement on its part, provided, however, that if it should be defendant that elected to exercise the option, it should return all of the stock to the Mullgardt-Hartman corporation in the same condition

and at the same price as received, and provided further that in such event it would be defendant's right and duty to finish and complete any and all current and uncompleted building contracts in the name of the Mullgardt-Hartman corporation.

At the time of entering into the agreement, Stiers requested that the fact of the execution of the contract be kept secret and not be told to the general trade for the reason that defendant owned an interest in several material firms which sold materials to other general contractors with whom the Mullgardt-Hartman corporation would thenceforth be in competition, and who might have been expected to withdraw their business from defendant's material firms if it were known that defendant was actively backing the Mullgardt-Hartman corporation.

Immediately upon the execution of the contract, the owners of the stock of the Mullgardt-Hartman corporation transferred the same to defendant along with the affidavits of both Mullgardt and Hartman that the stock was free and clear of all encumbrances, and at the same time both Mullgardt and Hartman executed undated resignations as officers of the Mullgardt-Hartman corporation, which were also turned over to defendant for it to hold or act upon at its pleasure. As a further step towards completing the transaction, a stockholders' meeting was held at which (according to testimony contained in Stiers' deposition) defendant voted the stock which had been turned over to it, and elected its own attorney, Mr. Robert N. Jones, as an officer and director of the Mullgardt-Hartman corporation in the place of Burten who had held the qualifying share. Mullgardt and Hartman were both reelected in compliance with the provision of the written agreement that they would be employed to continue the management of the company at fixed monthly salaries and with a share of the profits.

While the Mullgardt-Hartman corporation had no outstanding indebtedness at the time of entering into the arrangement with defendant, it had no more than $500 in its treasury, and possessed no other assets with which to carry on its business. As a result, within a few days after the contract had been executed, defendant advanced it the sum of $1,000 with which to start financing the operations of the company, and all told, during the time that the arrangement was continued in effect, contributed about $10,000, of which only $2,000 was ever repaid. As each advancement was made, the Mullgardt-Hartman corporation would execute its note to defendant; and the latter now claims that the fixed adherence to this practice evidenced the fact that its advancements to the Mullgardt-Hartman corporation constituted bona fide loans, thereby establishing the fact that the relationship between the two corporations was one of creditor and debtor rather than principal and agent, and completely negativing the idea that the effect of the arrangement was to bring about a fusion of identities as between the two corporations. Plaintiff insists, on

the other hand, that the procedure followed by way of requiring the execution of the notes was but another step in defendant's plan of maintaining the secrecy of its actual relationship with the Mullgardt-Hartman corporation, so that others in the trade would not become aware of the fact that defendant was using the Mullgardt-Hartman corporation as its own agent or instrumentality for engaging in the business which was secured in such corporation's name.

After the arrangement was effected between the two corporations, the Mullgardt-Hartman corporation started in at once to expand its operations, and in fact made bids on jobs that ran up to a million dollars. However, before submitting a bid on one of the larger jobs, Mullgardt and Hartman would first inform Stiers as to what they had figured the actual cost of the job to be, and then obtain his approval regarding the amount of the profit to be added to the actual cost of the work. Moreover, in the case of contracts where performance bonds were required, Stiers arranged with the Fidelity & Deposit Company of Maryland, upon defendant's personal responsibility, that bonds should be furnished the Mullgardt-Hartman corporation whenever its officers made application therefor. Among the larger jobs undertaken were those for the erection of a building for the Cole Chemical Company in St. Louis at a cost of about $58,000; the University City library at about the same cost; a high school in Harrisburg, Illinois, at a cost of $12,000; a church in Paducah, Kentucky, at a cost of about $25,000; and a building for the A. C. L. Haase Company in St. Louis at a cost of $40,000. In the performance of its contracts the Mullgardt-Hartman corporation did its own buying of the materials which were needed for the jobs, and incidentally (for whatever the reason may have been) made all of its purchases from material companies other than those in which defendant had an interest.

In conducting its operations the Mullgardt-Hartman corporation collected its own accounts, employed and discharged its employees without any interference from defendant, and, in general, made its own corporation reports and paid its own taxes and fees to the state and federal governments. In other words, so far as ordinary office transactions were concerned, defendant and the Mullgardt-Hartman corporation maintained their respective offices separately, with the exception that towards the end of 1939, defendant, in order to obtain a report on the Mullgardt-Hartman corporation's financial condition, sent over its auditor, Lucas, with instructions to audit such corporation's books and install the same system for keeping its books and accounts as was then in use in defendant's office. Lucas also made out two income tax returns for the Mullgardt-Hartman corporation, all at defendant's own expense, and without any compensation being paid him at any time by the Mullgardt-Hartman corporation. However, other expenses, such as the salaries drawn by Mullgardt

and Hartman, were paid by the Mullgardt-Hartman corporation out of funds received to its own account.

It eventually developed that the Mullgardt-Hartman corporation began to show a constant loss in its operations; and in March, 1940, Stiers called Mullgardt and Hartman to his office and informed them that he was no longer willing to continue the arrangement which had been in effect between the two corporations since the execution of the contract on April 1, 1938. At a subsequent meeting he suggested that the Mullgardt-Hartman corporation go into bankruptcy, but this proposal was rejected by both Mullgardt and Hartman, and no such step was ever taken. Thereafter defendant returned the stock and undated resignations to the Mullgardt-Hartman corporation; and on January 1, 1941, its charter was forfeited, and its corporate existence brought to an end.

It was stipulated and agreed that the two policies of insurance involved in this proceeding were issued by Hartford Accident & Indemnity Company on September 14, 1939, while the written agreement was in full force and effect between defendant and the Mullgardt-Hartman corporation. The latter was of course the named insured in the policies; and it was further stipulated and agreed that neither at nor prior to the time of the issuance of the policies did Hartford Accident & Indemnity Company have any knowledge of such written agreement or of the terms and provisions contained therein. As already pointed out, the one policy was a policy of public liability insurance and the other a policy of workmen's compensation and employers' liability insurance. Both policies extended to all jobs in which the Mullgardt-Hartman corporation was engaged; and while such corporation did not consult defendant regarding its application for the policies, it did later inform defendant that its liability was fully covered by insurance.

Defendant contends that the trial court erred in overruling its oral motion to try this action as an equity action. Plaintiff's petition in substance stated that on April 1, 1938, S. C. Mullgardt & E. C. Hartman, Inc., was engaged in the construction business; that by virtue of a contract defendant acquired all stock of the Mullgardt-Hartman corporation on that date; that by terms of that contract defendant agreed to pay all the debts and obligations incurred in the name of S. C. Mullgardt & E. C. Hartman, Inc.; "that during all the time said contract was in effect, defendant was actually engaged in the construction and erection of buildings and other structures in the State of Missouri, and elsewhere, under the name of, by and through S. C. Mullgardt & E. C. Hartman, Inc."; "that on or prior to the 14th day of September, 1939, S. C. Mullgardt & E. C. Hartman, Inc., while acting for and in behalf of defendant herein . . . obtained from the Hartford Accident & Indemnity Company a certain policy of Insurance No. P-L 195996"; that neither at nor prior to the time

the policy of insurance was issued by the Hartford Accident & Indemnity Company it had any notice or knowledge that S. C. Mullgardt & E. C. Hartman, Inc., was acting for defendant; ▮ and that the premium had not been paid.

These allegations are sufficient from which to draw the legal conclusion of agency. 3 C. J. S. Agency, Section 312.

The allegation "that the plan of operation, as set out in the aforesaid contract, by which S. C. Mullgardt & E. C. Hartman, Inc., continued to be operated apparently as a separate and distinct entity, was merely a sham and pretense for the purpose of concealing the operations of defendant" is surplusage. Since defendant made no attack upon plaintiff's petition prior to the verdict, the petition is sufficient to plead agency. Moreover, the above allegation does not charge that the arrangement between the two corporations was entered into with a view of perpetrating fraud or injustice. May Department Stores Co. v. Union Electric L. & P. Co., 341 Mo. 299, 107 S. W. (2d) 41; State v. Shell Pipe Line Corporation, 345 Mo. 1222, 139 S. W. (2d) 510. The trial court correctly overruled defendant's request that the case be tried as a suit in equity; thus, the plaintiff did not change his theory of recovery from merged identity to principal and agent on appeal.

▮ The theory of the plaintiff in seeking to hold defendant liable for the premiums on the insurance policy was that the operations covered by the policies were actually being performed by the defendant through the Mullgardt-Hartman corporation. In other words, the defendant was the undisclosed principal of the Mullgardt-Hartman corporation. Defendant contends that it was not the principal of the Mullgardt-Hartman corporation but its creditor. The question for our determination in whether plaintiff made a submissible case under the theory of agent and undisclosed principal; therefore, we will consider only the evidence most favorable to plaintiff on that issue. Gray v. Kurn, 345 Mo. 1027, 137 S. W. (2d) 558.

"It cannot be disputed that a corporation, as well as a natural person, may act as agent for another, and whether such relationship exists in any particular case may be proved by circumstances, such as the relation of the parties and their conduct with reference to the particular subject matter dealt with. It is also permissible to prove a previous course of dealing between the parties. 2 Am. Jur. 'Agency,' Sec. 443, page 351." National Plumbing Supply Co. v. Torretti, 175 S. W. (2d) 947, l. c. 951.

The close supervision of the Mullgardt-Hartman corporation by defendant immediately after the execution of the contract of April 1, 1938, defendant's request that the existence of the contract be kept secret, the delivery to defendant of the undated resignations of S. C. Mullgardt and E. C. Hartman as officers, the delivery of the stock transfer and minute books of that corporation to defendant, the elec-

tion of Robert N. Jones, defendant attorney, as vice-president in lieu of Burten, which was done without the knowledge of Mullgardt, the fact that defendant controlled the amount of profits to be included in bids submitted by the Mullgardt-Hartman corporation in certain kinds of construction, the necessity for defendant's permission to be obtained before submitting bids in other kinds of jobs, the contract of April 1, 1938, wherein defendant was to receive ninety per cent of any profits from work performed under the name of S. C. Mullgardt & E. C. Hartman, Inc., the defendant's designation from whom the performance bonds were to be obtained, defendant's causing to be installed in the office of this corporation an accounting system similar to that used by defendant, the contractual agreement that if any jobs should be left unfinished upon the termination of the contract of April 1, 1938, defendant reserved the right to complete the jobs in the name of S. C. Mullgardt & E. C. Hartman, Inc., the statement by Harold C. Stiers, defendant secretary, that this corporation was one of defendant's companies through which defendant operated its business, and the statements in the deposition of Lewis J. Stiers wherein he said, "Yes, we did some work" after the contract was entered into under the name of S. C. Mullgardt & E. C. Hartman, Inc., is sufficient evidence for the jury to conclude that the Mullgardt-Hartman corporation was defendant's agent during the time the contract of April 1, 1938, was in force, and it was for the jury to determine whether the insurance policies were purchased for defendant as the undisclosed principal of the Mullgardt-Hartman corporation.

Defendant also assigns as error the admission of the testimony of plaintiff witness, Walter Haase, an official of the A. C. L. Haase Company, for which the Mullgardt-Hartman corporation had just completed a construction job at the time of the termination of its contract with defendant. Haase testified that in the latter part of January, 1940, Harold C. Stiers, secretary of defendant corporation, called him over the telephone at his place of business, and after informing him that the Mullgardt-Hartman corporation was one of defendant's companies through which it operated and which it was backing one hundred per cent, requested that he furnish certain information regarding the amount of payments that the Haase company had made to the Mullgardt-Hartman corporation during the month or so preceding the conversation. The purpose of the information, so Stiers advised Haase, was to aid in an audit which defendant was having made of the affairs of the Mullgardt-Hartman corporation.

Haase supplied the information, and then in March of the same year, when his company was threatened with mechanics' liens, called Stiers to ascertain why the bills of the materialmen had not been paid. According to Haase, he had relied on Stiers' representation that the

Mullgardt-Hartman corporation was one of defendant's companies, and having acted upon that assurance, had felt secure in making payment to the Mullgardt-Hartman corporation without requiring receipts from all the materialmen who had sold materials for the job. However, in this conversation which involved the question of defendant's liability, Stiers denied that the Mullgardt-Hartman corporation was one of defendant's companies, but asserted instead that defendant had merely loaned it money. Haase then demanded to know why Stiers had changed his position from that he had taken in the previous conversation, to which Stiers allegedly replied that "we are trying to get out of paying anything more," and that "we have a lawyer in our office who is showing us how to get out of making these payments."

Defendant bases its objection to this testimony upon the ground that its own status with respect to the Mullgardt-Hartman corporation had been fixed prior to the time of the conversation between Stiers and Haase, and nothing said by Stiers could have changed such status or have created the relationship not already existing. This testimony was not offered for the purpose of creating an agency by anything Stiers may have said in his conversation with Haase, but to show the true character of the relationship which had already been created. The statement was admissible as it was an admission against interest made by an officer of the defendant in his capacity as such. Cutting v. Bryan, 30 Fed. 2d 754.

█ Defendant contends the following Instruction No. 1 is erroneous:

"The Court instructs the jury that if you find and believe from the evidence that prior to April 1, 1938, S. C. Mullgardt & E. C. Hartman, Inc., a corporation, was engaged in the business of the construction and erection of buildings and other structures in the State of Missouri and elsewhere and that on April 1, 1938, defendant was desirous of obtaining the stock of a corporation so engaged and that on said April 1, 1938, defendant entered into the written agreement with S. C. Mullgardt & E. C. Hartman, Inc., a corporation, and S. C. Mullgardt and E. C. Hartman, individuals, identified in evidence as Plaintiff's Exhibit 'A'; and if you further find and believe from the evidence that when said agreement was made all of the capital stock of S. C. Mullgardt & E. C. Hartman, Inc., was endorsed in blank by the stockholders and delivered to defendant and that S. C. Mullgardt and E. C. Hartman executed in writing their undated resignations as President and Secretary-Treasurer, respectively, of S. C. Mullgardt & E. C. Hartman, Inc., and said undated resignations were delivered to defendant; and if you further find and believe that thereupon said S. C. Mullgardt and E. C. Hartman were employed to continue the management of S. C. Mullgardt & E. C. Hartman, Inc., and for such services each of them were to be paid a salary and five per cent

of the net profits realized from the undertaking contemplated by said written contract; and if you further find and believe from the evidence that defendant's purpose in entering into said agreement and in obtaining said stock was to control and dominate said S. C. Mullgardt & E. C. Hartman, Inc., and to make it defendant's agent and instrumentality and department for the work of constructing and erecting buildings and other structures; and if you further find and believe from the evidence that in the period of from April 1, 1938, to about March, 1940, defendant did control and dominate said S. C. Mullgardt & E. C. Hartman, Inc., and that defendant used said corporation as its agent, instrumentality and department for conducting the work of constructing and erecting buildings and other structures and that prior to January, 1941, plaintiff had no knowledge thereof; and if you further find and believe that on or about the 14th day of September, 1939, S. C. Mullgardt & E. C. Hartman, Inc., purchased from plaintiff the insurance policies mentioned in evidence, then the Court instructs you that your verdict should be in favor of plaintiff and against defendant on both counts of plaintiff's petition, and in that event you will award plaintiff the sum of $275.60 with interest thereon at the rate of six per cent per annum from March 27, 1941, to date, on Count 1, and the sum of $1,212.56, with interest thereon at the rate of six per cent per annum from March 27, 1941, to date, on Count II.''

Defendant contends that the instruction is confusing and misleading in that ''it attempts, but fails, to submit either the theory of merged identity as between relator (defendant) and Mullgardt, or both that theory and that of principal and agent, but for various reasons succeeds in submitting neither.''

On the other hand, plaintiff contends that ''in plain and simple language, the instruction required the jury to determine from all the evidence whether the relationship between relator (defendant) and S. C. Mullgardt & E. C. Hartman, Inc., was that of principal and agent.'' If plaintiff is correct in its contention then the instruction is not erroneous; however, we are of the opinion that the instruction is confusing and misleading. That part of the instruction which says ''if you further find and believe from the evidence that defendant's purpose in entering into said agreement and in obtaining said stock was to control and dominate said S. C. Mullgardt & E. C. Hartman, Inc., and to make it defendant's agent and instrumentality and department for work of constructing and erecting buildings and other structures,'' tends to convey both the theory of merged identity and the theory of principal and agent; the use of the words ''control and dominate,'' ''instrumentality,'' and ''department'' tend to convey the theory of merged identity. That is to say, these words tend to show that the Mullgardt-Hartman corporation was merged with defendant. Webster's New International Dictionary,

674

Second Series, defines the word "department" as follows: "A part, portion, or subdivision"; "a division of a business concern handling a major function . . ." The Mullgardt-Hartman corporation cannot be a department of defendant without being a part of defendant.

We think this instruction is especially prejudicial in view of plaintiff's petition which contained the statement "that the plan of operaton, as set out in the aforesaid contract, by which said S. C. Mullgardt & E. C. Hartman, Inc., continued to be operated apparently as a separate and distinct entity, was merely a sham and pretense for the purpose of concealing the operations of defendant," and in view of the closing argument of plaintiff, when it said, " . . . the law looks at substance and not at form, and it says it was Stiers in law who was doing this business, and this cloaking in some other corporation means nothing to the administration of justice because we see through those things . . ."

It follows from what we have said that the record of respondents should be quashed in part and the judgment of the trial court should be reversed and remanded. It is so ordered. All concur.