428 P.2d 15

**COLDWATER CATTLE COMPANY, a corporation, et al., Plaintiffs-Appellees,**

v.

**PORTALES VALLEY PROJECT, INC., Defendant-Appellant.**

No. 8025.

Supreme Court of New Mexico.

April 24, 1967.

Rehearing Denied June 6, 1967.

Sanders & Bruin, B. R. Baldock, Roswell, for appellant.

Neal & Matkins, Stephen L. ReVeal, Carlsbad, F. L. Heidel, Lovington, amicus curiae.

Dan B. Buzzard, Smith, Smith & Tharp, Clovis, for appellees.

## OPINION

SPIESS, Judge, Court of Appeals.

Appellees, Coldwater Cattle Company, together with a number of other parties similarly situate brought this action to enjoin appellant, Portales Valley Project, Inc., from prosecuting 197 applications before the State Engineer for partial change of point of diversion and to supplement certain existing water rights and, further, to quiet the title to appellees' lands against appellant.

The trial court, after hearing, granted the injunction and entered a decree quieting appellees' titles as against appellant and against the claim or right of appellant to prosecute the applications before the State Engineer. From this judgment an appeal has been prosecuted.

Appellant is a non-profit corporation incorporated under § 51–14–1 et seq., N.M. S.A., 1953, for the purpose, generally of providing ways and means whereby supplemental water supplies may be obtained for those lands having valid existing water rights in the Portales Underground Water Basin, but which are unable to obtain sufficient water from existing wells to satisfy these rights. Membership in the corporation is limited to property owners residing within the exterior boundaries of the Portales Underground Water Basin who own valid existing water rights therein. Appellant owns no land or water rights.

As part of its effort to obtain supplemental waters for its membership, appellant filed the applications before the State Engineer seeking permission to partially change points of diversion and to supplement existing water rights to the extent of three-acre feet per year from all sources. The lands to which it is proposed to change points of diversion by drilling wells belong to or are leased by appellees and the supplemental water is proposed to be conveyed to lands of appellant's members for irrigation by means of pipes and concrete ditches.

After filing the aforementioned applications appellant, in accordance with §§ 75–11–7, 75–11–25, and 75–11–3, N.M.S.A., 1953, published notice of the filing in a newspaper of general circulation throughout Eastern New Mexico. As a result of the filing and publication of notice, the

trial court found that the market value of appellees' lands had been severely affected and decreased.

The facts involved, other than those relating to the depreciation in value of appellees' lands, were supplied to the trial court by stipulation of counsel and in the form of exhibits. Upon the facts so stipulated and the exhibits the court made the following conclusions of law upon which the judgment is based.

"1. The Court has jurisdiction of the parties and subject matter of this action.

2. Plaintiffs are entitled to Judgment quieting title to their respective patented lands, described in Exhibit 'A', and upon which defendant seeks to drill water wells, against the claim of right of the Defendant to prosecute water applications now pending.

3. Defendant is not legally qualified under the law to file the various applications it has filed to move the points of diversion of various wells to the lands to which they are sought to be moved or to appropriate supplemental water to replenish and restore the original water rights of its various members, the defendant owning no water right to be moved; and defendant does not have authority by virtue of its articles of incorporation and the laws of the State of New Mexico to prosecute the various applications for and on behalf of its membership individually or as a group and should be enjoined and restrained from further prosecuting said applications or further attempting to perfect them. That said injunction should extend to the Defendant, its agents, officers, servants and employees, and all persons acting in concert or privity with Defendant.

4. That the Defendant should be enjoined and restrained from entering upon the lands of the Plaintiffs and each of them for the purpose of drilling a water well thereon until such time as Defendant has a valid water right so to do and until such time as the Defendant has the right to legally enter upon said lands by a proper lease from the State of New Mexico as to State lands or by proper authority from the owners of the private lands."

It is appellant's contention that the conclusions Nos. 2, 3 and 4 are erroneous as a matter of law, which is the basis of this appeal.

While appellant has divided its argument into three points actually it is resolved into two points which we will consider separately. First, it is contended, contrary to conclusion No. 3, that appellant does have authority by virtue of its articles of incorporation and the laws of the State of New Mexico to prosecute the various applications for and on behalf of its membership individually or as a group and the trial court erred in enjoining it from so acting. Further, that its right to act as an agent for its members is not affected by the fact that it does not itself own a water right which might be supplemented.

Appellant's first contention invokes a decision only as to whether appellant has the capacity or can act in behalf of its members as their agent in prosecuting the applications for supplemental water.

The statutes under which appellant purports to act for the benefit of its members are § 75–11–25 and § 75–11–7, N.M.S.A., 1953, as follows:

"A. The owner of a water right may drill and use a supplemental well upon making application but prior to the publication and hearing set out in section 75–11–3 New Mexico Statutes Annotated, 1953 Compilation, if:

(1) The supplemental well is drilled into the same and only the same underground stream, channel, artesian basin, reservoir or lake as the well being supplemented, and

(2) The supplemental well does not increase the appropriation of water to an amount above the existing water rights, and

(3) An emergency situation exists in which the delay caused by publication

and hearing would result in crop loss or other serious economic loss, and

(4) The state engineer, after a preliminary investigation, finds that the supplemental well does not impair existing water rights, and grants him a permit authorizing the drilling and use of the supplemental well prior to publication and hearing.

B. If the preliminary investigation by the state engineer causes him to reasonably believe that the drilling and use of a supplemental well may impair existing rights, then no permit shall be issued until after publication and hearing." (See 75–11–25, supra.)

"The owner of a water right may change the location of his well or change the use of the water, but only upon application to the state engineer and upon showing that such change or changes will not impair existing rights and to be granted only after such advertisement and hearing as are prescribed in the case of original applications.

When the owner of a water right makes application or applications for a temporary change of not to exceed one [1] year for not more than three [3] acre-feet of water to a different location, or to a different use, or both, the state engineer shall make an investigation, and, if such change does not permanently impair any vested rights of others, he shall make an order authorizing the change. If he shall find that the change sought might impair such rights, he shall order advertisement and hearing as in other cases." (See 75–11–7, supra.)

It is suggested by appellees that under the language of this act only the owners of a water right can make or prosecute applications for a supplemental well and as a consequence an agent is excluded from performing any of the required acts. With this suggestion we do not agree.

It is a general rule, subject, however, to certain exceptions, not applicable here, that an agency may be created for the performance of any lawful act, including acts done under the authority of a statute. I Mechem on Agency, 2nd Ed., § 80. In order to determine that a right conferred by statute shall only be exercised personally and cannot be delegated to an agent something must be found in the Act by express enactment or necessary implication which prevents an agent from acting. State ex rel. Hansen v. Schall, 126 Conn. 536, 12 A.2d 767 (1940); Mansfield v. Scully, 129 Conn. 494, 29 A.2d 444 (1942); Ludwig v. Cory, 158 Ind. 582, 64 N.E. 14 (1902); I Mechem on Agency, 2nd Ed., § 125, n.21:

There is nothing in the language of the acts as we read them which would expressly or impliedly prevent an agent of the owners of water rights from filing and prosecuting applications for the drilling of supplemental wells in behalf of the owners. We see no basis for holding that the procedural acts required of the owner of a water right under § 75–11–7 (supra) and § 75–11–25 (supra) cannot be performed by an agent for the owner.

The clear intendment of these statutes is to provide a procedure for determining whether proposed changes injuriously affect the rights of others, Clodfelter v. Reynolds, 68 N.M. 61, 358 P.2d 626 (1961); not to limit the right of water right owners in changing the point of diversion to act only in person and not through a designated agency. Compare Mathers v. Texaco, Inc., 77 N.M. 239, 421 P.2d 771, 777 (1966); Monte Vista Canal Co. v. Centennial Irrigating Ditch Co., 24 Colo.App. 496, 135 P. 981 (1913).

Since we hold that the owner of a water right may delegate the function of filing and prosecuting such applications we next consider whether appellant has the capacity to so act.

It is a generally accepted rule that within its scope a corporation may act as agent for an individual, a partnership, or another corporation unless there are express provisions in its articles to the contrary. I Mechem on Agency, 2nd Ed., §

173; Rest., Agency 2d, § 21; Dekle v. Southern Bell Tel. & Tel. Co., 208 Ga. 254, 66 S.E.2d 218 (1951). See also Mencher v. Weiss, 306 N.Y. 1, 114 N.E.2d 177 (1953); Kourik v. English, 340 Mo. 367, 100 S.W.2d 901 (1936); State ex rel. Stiers Bros. Const. Co. v. Hughes, 354 Mo. 659, 190 S.W.2d 880 (1945); Greer v. Commissioner of Internal Revenue, 334 F.2d 20 (5 Cir., 1964); United States v. Reading Co., 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760 (1920); United States v. Lehigh Valley R. Co., 220 U.S. 257, 31 S.Ct. 387, 55 L.Ed. 458 (1911).

The determining question, therefore, is whether appellant's acts as agent fall within its corporate scope or purpose. The parties entered into a stipulation relating to appellants corporate organization together with its purposes and upon which the trial court made the following findings.

"2. It was stipulated that Portales Valley Project, Inc. is a valid, existing New Mexico non-profit corporation incorporated under the laws of the State of New Mexico (51–14–1 et seq. N.M.S.A., 1953); that the purposes for which the corporation was formed are:

(a) To preserve and protect the shallow underground water supply in the Portales Underground Water Basin.

(b) To obtain and provide ways and means whereby supplemental water supplies may be obtained from various sources for the purpose of providing additional and supplemental water to those lands having valid existing shallow underground water rights in the Portales Underground Water Basin, which said lands presently are without adequate supplies of water to insure reasonable and normal irrigation use.

(c) To do and perform any and all acts necessary, incidental and proper to provide for the general welfare of the members of said corporation.

(d) To own lands, drill wells, build canals and underground water lines.

(e) To do any and all other things necessary, incidental and proper to the fulfillment of the aims and purposes to which this said corporation is dedicated, including the appropriation of and transmission of water, from all sources, and to file applications for the drilling of wells and installation and pumping plants in connection therewith, to the use and benefit of the members of the corporation and to own real and personal property in connection with the purposes hereof."

■ Measured by the rule stated and the stipulated findings of fact there is no question in our minds but that appellant had the requisite corporate capacity to file and prosecute the applications on behalf of its members. Such acts were within its scope.

That appellant owned no water rights does not affect its capacity to act as an agent in behalf of those who do own such rights. It cannot be said either upon authority or reason that an agent's capacity to act is dependent upon his ownership of an interest in the property or a similar class of property with which he is dealing in performing his agency.

Appellees contend that the question of whether appellant legally had capacity to act as agent for its members is not an issue in that the applications actually filed by appellant do not disclose that they were filed on behalf of others. Whether the applications disclosed an agency status is, in our opinion, unimportant for the reason that the facts clearly disclose that appellant was so acting and was recognized as so acting throughout the discussions between the trial court and counsel and further recognized by the trial court in its conclusion of law No. 3.

■ The applications reasonably suggest that appellant was acting in behalf of others in that the statement attached and forming a part of the applications states that appellant is a non-profit corporation whose purpose includes the acquisition of supplemental underground water rights for certain of its members. Any change of point

of diversion would necessarily have to be based upon an existing right in an agent's principal.

Appellees likewise contend that appellant's acts and those contemplated were and are illegal on the ground that such acts can be performed only by corporations organized under statutes specifically authorizing the organization of corporations with powers relating to irrigation, which statutes are encompassed in §§ 75–1–1 to 75–37–15, N.M.S.A., 1953.

This argument goes to the validity of appellant's organization and is not properly subject to consideration in view of the *stipulation of the parties which we have* mentioned. It may also be that the state alone can raise the question of whether appellant's acts amount to an unlawful usurpation of a franchise.

It is our view that appellant can lawfully file and prosecute the applications involved before the State Engineer. It necessarily follows that the judgment enjoining and restraining it from so doing was improper unless ownership of the surface is a necessary prerequisite to making application to drill a well.

Appellant attacks the propriety of the judgment quieting appellees' titles as against appellant and its right to prosecute the applications before the State Engineer. The language of the portion of the judgment which is the subject of appellant's last point is as follows:

"IT IS THEREFORE ORDERED, ADJUDGED, CONSIDERED AND DECREED BY THE COURT:

1. That the title of the plaintiffs in severalty in and to the lands described in the Complaint filed herein be and it is hereby established and quieted as against the defendant and as against the claim of the right of defendant to prosecute its applications before the State Engineer as set forth in the Complaint filed herein."

The Portales underground water basin was declared on December 1, 1950.

On July 18, 1955, its boundaries were extended and revised on November 3, 1955. The waters of this basin underlie the subject lands of appellees. It can not be disputed that these waters belong to the public of the state of New Mexico and are subject to appropriation for beneficial use in accordance with applicable law and likewise may be available to supplement established rights to waters of the basin under proper circumstances and through following established procedures.

The rights which appellant seeks to supplement through the applications are those of its principals and any supplemental water right so procured would belong exclusively to them. Although appellant has in its application indicated that the location of the proposed wells are to be upon lands of appellees, appellant has made no claim of right to enter into or upon appellees' lands to drill wells or for any purpose whatsoever.

The trial court made the following finding of fact which was based upon a stipulation of the parties.

"13. It is stipulated that the Defendant has not entered upon any of the lands of Plaintiffs or trespassed thereupon and in open court it disclaimed any present claim to a right, title or interest in or to or lien upon said lands and does not now claim nor has it ever claimed any such interest. It does not claim the right presently to enter upon said lands or trespass thereupon or assert any dominion over them. The only right claimed by it is to prosecute the pending applications and to enter upon and drill wells upon said lands only after having first obtained a permit from the State Engineer so to do and having obtained a right of lawful entry from the owner of said lands."

Since the trial court expressly found that appellant makes no claim of any kind adverse to the estate of appellees in or to their lands a decree quieting title against it should not have been rendered.

We question whether one may quiet title as against the right of another as agent or otherwise to prosecute applications before the State Engineer, as appears to have been undertaken here.

The apparent purpose of this part of the judgment is to remove the applications as clouds upon appellees' title and to prevent further beclouding through prosecution of the applications.

To justify the removal of an instrument or instruments as clouds upon title the instrument sought to be removed must itself be invalid or inoperative and injuriously affect the title. Phelps v. Harris, 101 U.S. 370, 25 L.Ed. 855 (1879); Glos v. People, 259 Ill. 332, 102 N.E. 763 (1913); Hill v. 1550 Hinman Ave. Bldg. Corp., 365 Ill. 129, 6 N.E.2d 128 (1937).

The applications, in our opinion, are neither invalid nor inoperative, nor do they cast any cloud on plaintiffs' title to the real estate and consequently are not subject to being removed as clouds upon title.

It is argued by appellee that what appellant is actually trying to do is to establish a priority on unappropriated water under appellee's land, and illegally hold the right in abeyance until a feasibility report can be obtained from the U.S. Bureau of Reclamation. To support this position appellee cites § 75–5–31, N.M.S.A., 1953. Aside from any question as to whether the section has any application to underground water this Act applies only to the contemplated use of water for federal reclamation projects and, in our opinion, has no bearing on the matter presented here.

It is further argued by appellee that because appellant had filed the applications involved and asserts the right to prosecute them to completion appellee's lands have diminished in value; that such diminution warrants the judgment quieting title in appellees and against appellant. In view of our holding that appellant was

legally entitled to file the applications any damage occasioned thereby to appellees is the result of the lawful exercise of a legal right and not subject to judicial remedy.

Appellees further take the position that as owners of the real estate in question they have the right not to have applications filed before the State Engineer to drill wells upon their property by persons with no right, title or interest to the surface of the real estate. Appellees say: "Only if an applicant has a legal right of entry upon the real estate upon which wells are sought to be drilled may such application be prosecuted. For someone without any interest in the real estate to make an application is a constructive trespass."

We see no language in the statutes which prescribe the procedure for obtaining a permit to drill additional wells to supplement existing water rights, §§ 75–11–7 and 75–11–25, supra, intimating that ownership of land to which a point of diversion is to be changed is a condition precedent to the right to apply for authority to effect such change.

The mere filing of an application and publication of notice thereunder does not authorize the applicant to enter upon the private land of another to sink wells or construct ditches or canals. Such right clearly may not be exercised without a lawful right of entry.

The disposition of this case does not require that we determine whether appellant or its individual members can exercise the right of eminent domain and thus secure a lawful right of entry, nor need we speculate as to whether appellees will grant or deny a right of entry if the applications should be approved. Neither do we intend to express an opinion on the question of whether the applications are sufficient under §§ 75–11–7 and 75–11–25, supra, or provide any proper basis for the granting of the rights sought.

In accordance with the foregoing it is our opinion that the judgment was im-

properly rendered. The cause is reversed with directions to vacate the judgment and dismiss the proceedings.

It is so ordered.

CHAVEZ, C. J., and MOISE, J., concur.