798 P.2d 186

Carl A. HAALAND and Marilyn R. Haaland, Plaintiffs–Appellees and Cross–Appellants,

v.

Clifford A. BALTZLEY, Defendant–Appellant and Cross–Appellee.

No. 18685.

Supreme Court of New Mexico.

Sept. 25, 1990.

Daniel J. O'Friel, Ltd., Daniel J. O'Friel, Linda Martinez–Palmer, Santa Fe, for plaintiffs-appellees and cross-appellants.

Michael L. Gregory, Las Vegas, for defendant-appellant and cross-appellee.

## OPINION

WILSON, Justice.

Plaintiffs filed a complaint seeking to recover their interest in a horse business. The jury returned a verdict in favor of plaintiffs for $61,938.50. The trial court entered judgment in the amount of the jury

verdict plus costs. Defendant appeals the judgment and plaintiffs cross appeal. We affirm the trial court.

STATEMENT OF FACTS

The plaintiffs Haaland and defendant Clifford A. Baltzley and his wife Nola Baltzley entered into an oral agreement in the summer of 1984 to acquire, promote, breed and sell Norwegian Fjord horses. The parties intended that they would be equal partners in a corporation. The Haalands and Baltzley each contributed cash and assets valued at $20,741.50 to the business.

Mr. Baltzley is eighty-nine years old and the parties contemplated that Carl Haaland, age forty, would contribute his knowledge of the breed, his Norwegian contacts, and his public relations skills to help sell and promote the breed so that the venture would have an opportunity to grow. Haaland would also be responsible for training, grooming and caring for the horses. Baltzley would contribute his business knowledge, his experience in breeding pedigree animals and his experience with corporations.

It was also agreed that Baltzley would provide funds in excess of the capital contribution made by each party. He would be compensated for those advances together with interest at ten percent per annum.

In fact, the parties failed to properly establish and capitalize the corporation or issue corporate stock and essentially conducted their business as an oral general partnership. It does not appear that any assets were ever actually transferred to the corporation other than the four horses initially belonging to plaintiffs.

Until May 1985, the partners purchased horses from Harold Jacobson in Colorado. By that time Mr. Baltzley had paid, or agreed to pay, Harold Jacobson a total of $186,860.05, including interest. A total of thirty-three horses were purchased with this amount.

The partnership operated from July 1984 to January 9, 1986, the date when the Haalands resigned from Norwegian Fjord Horses, Inc. On May 20, 1987, the Haa-lands, through counsel, demanded payment from Baltzley for their interest in the business in the amount of $55,673.30.

The Haalands also entered into an employment contract with defendant Baltzley in March 1985. This contract was for ranch management and construction services at the Bar X Bar Ranch, and was not directly related to the horse business. In November 1985 defendant Baltzley discharged Carl and Marilyn Haaland from the employment contract. They left the Bar X Bar Ranch and have not, since that date, worked with the horses, contributed to the corporation or participated in promotion or sale of the horses. They both resigned as corporate officers on January 9, 1986.

After the Haalands resigned, the Baltzleys continued to provide for the horses and to make some sales. The Haalands took no further action in regard to their interest in the business until February 1987, when they demanded an accounting. The total income for the enterprise was reported in April 1987 as $92,448.35.

At trial, Carl Haaland testified that he believed the horse business agreement to be continuing after he left the ranch and resigned as a corporate officer. Defendant Baltzley agreed. The Haalands claimed that they were entitled to one-half of the horses and one-half of the fair debt as of the date of their appearance in court.

STATEMENT OF THE ISSUES

On appeal, defendant argues that:
(1) The trial court erred in dissolving the partnership at the time of trial;
(2) The jury disregarded the court's instructions;
(3) The jury verdict was not supported by substantial evidence.

In their cross appeal, plaintiffs argue that the trial court erred in not assessing prejudgment interest.

DISCUSSION

At the close of trial, the trial court entered its judgment dissolving the partnership. Defendant argues that the trial court erred in dissolving the partnership based upon two theories:

(1) That a dissolution of partnership is an equitable procedure and could not be done by jury verdict;

(2) That the dissolution of the partnership is a separate proceeding which was not pled or litigated by the parties.

The first assertion of appellant is answered by observing that the jury verdict found the value of plaintiffs' interest in the partnership at the time of trial without regard as to whether or not the partnership would be dissolved at that time. The second assertion is answered by the record of this case. In discussions in the court record defendant's counsel, immediately prior to the submission of the case to the jury, stated that he believed the partnership should be dissolved upón rendering of the verdict. The plaintiffs Haaland, through their counsel, concurred.

In addition, the parties stipulated that whatever the jury verdict might be Mr. Baltzley would, after the verdict, own the entire business together with all assets, and the Haalands would either receive payment for their interest in the business, or would pay whatever amount they owed to Mr. Baltzley. The parties' stipulation that the court should dissolve the partnership and that the verdict with payment to or from the Haalands would terminate the parties' relationship constituted a stipulation that the court should enter judgment dissolving the partnership. Facts stipulated to are not reviewable on appeal. *See Coldwater Cattle Co. v. Portales Valley Project, Inc.*, 78 N.M. 41, 428 P.2d 15 (1967). This stipulation of the parties, together with the theory of the case as submitted to the jury under jury instructions, became the law of the case, binding upon the parties to the controversy. *See Peay v. Ortega*, 101 N.M. 564, 686 P.2d 254 (1984); *American Tel. & Tel. Co. v. Walker*, 77 N.M. 755, 427 P.2d 267 (1967).

Defendant asserts in his appeal that the jury instructions required the jury to determine the net value of the partnership at the time of dissolution and award the Haalands one-half of that amount. He argues that instead the jury verdict was based upon a purported contract for Baltzley to purchase the Haalands' interest in the partnership.

At the time of trial, exhibit No. 120 was introduced into evidence to show the value of the partnership in November 1985, the approximate date when the Haalands ceased active participation in the venture. Exhibit 120 shows a total asset value of $238,000, reduced by pasture expenses of $3,190, by a promissory note in favor of defendant Baltzley in the amount of $82,-933.04, by a promissory note to Mr. Jacobson in the amount of $25,000, and further reduced by a debt in the amount of $3,000, for a net value of $123,877. One-half of that amount is $61,938.50, the amount of the jury verdict. Therefore, the verdict was not based on any alleged contract to purchase the Haalands' interest, but was in fact based upon the jury's calculation of the Haalands' one-half of the net value of the partnership. Thus the jury did not disregard the court's instructions.

Defendant continues to argue that the evidence would have supported a further reduction from the net value of the partnership for expenses which he paid over and above the operation's income from 1985 to the date of trial. The question, however, is not whether the evidence would have supported a different verdict, but whether there is evidence to support the result that was reached. *See Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967). The jury was not required to accept the evidence offered by Baltzley; they could have determined that the value of the partnership did not change after 1985.

A jury verdict will not be disturbed when supported by substantial evidence. *See Getz v. Equitable Life Assurance Soc'y*, 90 N.M. 195, 561 P.2d 468, *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Toltec Int'l, Inc. v. Village of Ruidoso*, 95 N.M. 82, 619 P.2d 186 (1980). On appeal all disputed facts are resolved in favor of the successful party with all rea-

sonable inferences indulged in support of a verdict and all evidence and inferences to the contrary disregarded, and although contrary evidence is presented which may have supported a different verdict, the appellate court will not weigh the evidence or foreclose a finding of substantial evidence. *Id.* In this case there were five days of testimony and 115 documentary exhibits. We find there was substantial evidence in the record to support the jury's finding that the Haalands' one-half interest in the property was $61,938.50.

 Plaintiffs urge upon this court the proposition that they should receive prejudgment interest on the amount of the jury verdict. The awarding of prejudgment interest is within the sound discretion of the trial court, except that it should be awarded as a matter of right in those cases where the amount due under a contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices. *Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980). It is clear in this case that the amount owed the Haalands could not be determined by mathematical certainty prior to trial. In addition, the date of dissolution of the partnership was the date of trial, therefore no prejudgment interest would have been due.

CONCLUSION

Finding no error, we affirm the judgment of the trial court.

IT IS SO ORDERED.

BACA and MONTGOMERY, JJ., concur.