872 P.2d 346

**SUNWEST BANK OF ALBUQUERQUE, N.A., Plaintiff–Appellee and Cross–Appellant,**

v.

**Michael A. COLUCCI, Defendant–Appellant and Cross–Appellee.**

No. 20673.

Supreme Court of New Mexico.

March 10, 1994.

Bruce C. Redd, Clara Ann Bowler, Albuquerque, for appellant and cross-appellee.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., R. Alfred Walker, Albuquerque, for appellee and cross-appellant.

*OPINION*

MONTGOMERY, Chief Justice.

The principal issue in this case, discussed later in this opinion, relates to a subject arising frequently in New Mexico caselaw—prejudgment interest. We seek to clarify the circumstances under which each of the two New Mexico statutes governing an award of prejudgment interest, NMSA 1978, Sections 56–8–3 (Repl.Pamp.1986) and 56–8–4(B) (Cum.Supp.1993), is applied.

The case consists of an appeal and a cross-appeal from a judgment awarding a bank restitution for a mistaken payment. On appeal, the recipient of the payment argues that the trial court misapplied the doctrine of unjust enrichment. On cross-appeal, the bank argues that the trial court erred by failing to award prejudgment interest and by awarding postjudgment interest at a variable rate. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS

In October 1964, Mona Florence and Sue Rutter were joint tenants in checking account No. 24–1987–4 ("the Account") at Sunwest Bank of Albuquerque ("the Bank"). Mona Florence married Michael Colucci ("Colucci") in 1978, and at some point she and Ms. Rutter directed Sunwest Bank to add Colucci as a P.O.D. (payable on death) beneficiary to the Account. Mona Florence Colucci died in May 1990.

After his wife's death, Colucci called the Bank about the Account and was told that the money in the Account did not belong to him. On June 5, 1990, Colucci went to the Bank and spoke to Arnold Cordova, who was relieving the branch manager during the manager's vacation, about withdrawing the funds in the Account. Cordova mistakenly reviewed the signature card to another account, No. 24–79–001, a joint account between Colucci and Mrs. Colucci, rather than the correct card for the joint account (the Account) between Mrs. Colucci and Ms. Rutter. He then issued a cashier's check for the balance in the Account, $12,256.51, and gave it to Colucci.

On September 14, 1990, the Bank filed a complaint against Colucci for money paid by mistake and unjust enrichment, requesting interest on the money due from the date of the mistaken payment. The Bank claimed that it had mistakenly paid Colucci funds from the Account and that the money in that

account belonged to Ms. Rutter, not Colucci, upon Mrs. Colucci's death. The court conducted a bench trial in April 1992 and in May entered judgment in favor of the Bank. The court concluded that the balance in the Account had been paid to Colucci by mistake and that he had been unjustly enriched. Colucci was ordered to pay the Bank $12,256.31, with postjudgment interest to be calculated "at a variable rate equal to the rate paid by [the Bank] to the Federal Reserve for funds borrowed." No prejudgment interest was awarded. Colucci, by the personal representative of his estate,[1] appeals from the judgment; and the Bank cross-appeals.

On appeal, Colucci argues that (1) the trial court misapplied the doctrine of unjust enrichment because it failed to consider whether Colucci was in fact unjustly enriched and whether the enrichment was at the Bank's expense, and (2) that the Bank should not be entitled to restitution because the harm was caused by its repeated negligence and failure to exercise due diligence. We affirm the trial court's judgment in favor of the Bank.

The Bank contends on cross-appeal that the trial court erred in refusing to permit it to recover prejudgment interest and in setting postjudgment interest at a variable rate. We reverse the trial court on the Bank's cross-appeal and remand for further proceedings.

## II.  COLUCCI'S APPEAL

■ We now address the issues raised by Colucci on his direct appeal. We begin by reiterating the time-worn axioms that the judgment of the trial court will not be disturbed on appeal if the findings of fact entered by the trial court are supported by substantial evidence and are sufficient to support the judgment, *e.g., Whorton v. Mr. C's,* 101 N.M. 651, 653, 687 P.2d 86, 88 (1984), and that substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *e.g., Haaland v. Baltzley,* 110 N.M. 585, 588, 798 P.2d 186, 189 (1990). We also note that

when a party is challenging a legal conclusion, the standard of review is whether the law was correctly applied to the facts. *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.,* 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991).

■ Colucci contends that the trial court erred in finding that he had been unjustly enriched. There is no question that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1 (1937); *see Hydro Conduit Corp. v. Kemble,* 110 N.M. 173, 175, 793 P.2d 855, 857 (1990) (citing Restatement of Restitution § 1 and stating that restitution is created by courts for reasons of justice and equity). Therefore, if Colucci was unjustly enriched at the Bank's expense he must make restitution to the Bank. Colucci argues that if he was enriched, it was not at the Bank's expense; he also asserts that he was not unjustly enriched.

A person who receives a benefit has been enriched. Restatement of Restitution § 1 cmt. a. A person who receives any sort of advantage, such as possession of or some other interest in money, has been conferred a benefit. *Id.* § 1 cmt. b. Colucci received a benefit when the Bank gave him a cashier's check for more than $12,000, and he was thus enriched.

■ Colucci maintains, however, that he was not enriched at the Bank's expense, because the Bank had no interest in the funds he received except as custodian for Ms. Rutter. This argument misapprehends the relationship between a bank and its depositor. "The relationship between a bank and its depositor is a contractual relationship of debtor and creditor." *Loucks v. Albuquerque Nat'l Bank,* 76 N.M. 735, 743, 418 P.2d 191, 197 (1966). When money is deposited in a bank, the money becomes the property of the bank and the bank becomes a debtor to the depositor. 1 Raymond Natter et al., *Banking Law* § 9.05, at 9–19 (1994); *see also*

---

**1.** Michael Colucci died during the pendency of this appeal. On June 21, 1993, after the briefs had been filed and the case had been argued, Dawn E. Colucci, as personal representative of his estate, was substituted as a party in place of Michael Colucci pursuant to SCRA 1986, 12–301(A) (Repl.Pamp.1992).

*In re Nat Warren Contracting Co. (Alexander & Jones v. Sovran Bank, N.A.)*, 905 F.2d 716, 718 (4th Cir.1990) (money deposited in bank becomes bank's property and depositor is creditor of bank).[2] The funds that Colucci received belonged to the Bank, and so Colucci benefitted at the Bank's expense.

■ Since Colucci clearly benefitted at the Bank's expense, the question remains whether the facts support the court's conclusion that he was unjustly enriched. A person receiving a benefit has been unjustly enriched if retention of the benefit would be unjust. Restatement of Restitution § 1 cmt. a. It is often considered unjust to retain a benefit where there has been a mistake in conferring the benefit. *See id.* §§ 15 to 55 (stating conditions under which there is right to restitution because of mistake in conferring a benefit). For example, "Where a plaintiff has paid money in the mistaken belief that an enforceable contract exists, the plaintiff is entitled to recover the money paid, as restitution." *Reynolds v. Slaughter*, 541 F.2d 254, 256 (10th Cir.1976) (applying New Mexico law); *see also* Restatement of Restitution § 15 (person is entitled to recover money paid another pursuant to supposed contract person erroneously believed to exist); *Rabbit Ear Cattle Co. v. Frieze*, 80 N.M. 203, 204, 453 P.2d 373, 374 (1969) ("The general rule is that payments made as a result of a material mistake of fact are regarded as involuntary and are recoverable.").

■ The Account, owned by Mrs. Colucci and Ms. Rutter, was a joint account.[3] *See Johnston v. Sunwest Bank*, 116 N.M. 422, 424, 863 P.2d 1043, 1045 (1993). When Mr. Cordova, acting on behalf of the Bank, mistakenly closed out the Account, a section of the Probate Code, NMSA 1978, Section 45–6–104(A) (Repl.Pamp.1989), provided in part:[4]

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.

Ms. Rutter, as the surviving party, was the owner of the funds remaining in the Account on the death of Mrs. Colucci in the absence of clear and convincing evidence that the parties had a different intention when creating the account. *See Barham v. Jones*, 98 N.M. 195, 197, 647 P.2d 397, 399 (1982) ("With a joint account, the law presumes a right of survivorship in the surviving party."). Colucci, as a P.O.D. beneficiary of the Account, would be entitled to the account balance only upon the deaths of both Mrs. Colucci and Ms. Rutter. *See* § 45–6–104(B) (providing that if account is P.O.D. account, sums remaining on deposit on death of survivor of two or more original payees belong to P.O.D. payee).

The Bank's employee, Mr. Cordova, testified that he reviewed the wrong signature card before disbursing the funds in the Account to Colucci and that Ms. Rutter was in fact entitled to those funds. We hold that this was substantial evidence to support the trial court's finding that the account balance was mistakenly paid to Colucci. We also hold that this finding supports the court's judgment. Because the Bank mistakenly believed that a debtor-creditor relationship existed between it and Colucci obligating it to pay the balance in the Account to him, the

---

2. A "depositor" is "one whose money is commingled with the general funds of a bank, who is acknowledged by the bank to be a creditor in the amount of the deposit, and who is under no obligation to permit the money to remain in the bank." 1 Natter, *supra*, § 9.03, at 9–15. Ms. Rutter was a depositor on the Account and was thus a creditor of the Bank in the amount of the funds deposited in that account.

3. Under the law governing the transactions at issue in this appeal, a "joint account" was "any account payable on request to one or more of two or more parties whether or not any mention is made of any right of survivorship." NMSA 1978, § 45–6–101(D) (Repl.Pamp.1989), *repealed by* N.M. Laws 1992, ch. 66, § 71, as of July 1, 1992. This definition of "joint account" applies to the term "multiple-party account" in the current version of the statute. *See* NMSA 1978, § 45–6–201(E) (Repl.Pamp.1993).

4. Section 45–6–104(A) was repealed by N.M. Laws 1992, ch. 66, § 71, effective July 1, 1992. Current New Mexico law is substantially to the same effect. *See* NMSA 1978, § 45–6–212(A) (Repl.Pamp.1993).

Bank was entitled to restitution for Colucci's unjust enrichment.

Colucci contends that the Bank should not receive restitution because of its negligence and failure to exercise due diligence. We disagree. The *Restatement* states: "A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care." Restatement of Restitution § 59. This is so because one is not penalized for lack of care unless it results in harm to someone else. *Id.* § 59 cmt. a. Although the Bank may have been negligent in disbursing the funds to Colucci, its negligence caused no harm to anyone except itself and Ms. Rutter—certainly not to Colucci. Colucci thus benefitted at the Bank's expense and must make restitution. *See Naugle v. O'Connell,* 833 F.2d 1391, 1398 (10th Cir.1987) (" '[R]estitution, based on mistake of fact, will not be denied because of forgetfulness of once known facts or negligent failure to ascertain the true facts.' ") (quoting *Sawyer v. Mid–Continent Petroleum Corp.,* 236 F.2d 518, 521 (10th Cir.1956) (applying New Mexico law)). We therefore affirm the trial court's judgment awarding the Bank $12,256.31 in restitution for money mistakenly paid.

### III. THE BANK'S CROSS–APPEAL

We turn now to the Bank's cross-appeal from the trial court's rulings on prejudgment and postjudgment interest. The court denied the Bank's request for prejudgment interest and awarded postjudgment interest on the judgment at a variable rate. The Bank argues that it was entitled to prejudgment interest as a matter of right and that the court did not have discretion to set the rate of postjudgment interest at other

than the statutory rate. We basically agree with these arguments (subject to the qualification noted below concerning "countervailing equities") and reverse the trial court for the reasons given in the remainder of this opinion.

### A. Prejudgment Interest

Prejudgment interest may be awarded under either Section 56–8–3 [5] or Section 56–8–4(B).[6] Section 56–8–3 allows prejudgment interest in cases on money due by contract, money received to the use of another and retained without the owner's consent, and money due on the settlement of matured accounts. Section 56–8–4(B) allows prejudgment interest in the discretion of the court after the court considers, among other things, whether the plaintiff was the cause of unreasonable delay in the adjudication of his or her claims and whether the defendant had previously made a reasonable and timely offer of settlement.

The obligation to pay prejudgment interest under Section 56–8–3 arises by operation of law and constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment (the loss of use and earning power of the claimant's funds). *See Economy Rentals, Inc. v. Garcia,* 112 N.M. 748, 762, 819 P.2d 1306, 1320 (1991). Section 56–8–3 is construed according to Restatement of Contracts § 337 (1932), which takes the view that prejudgment interest should be awarded as a matter of right under certain circumstances. *Shaeffer v. Kelton,* 95 N.M. 182, 187–88, 619 P.2d 1226, 1231–32 (1980). As we recently noted:

---

5. Section 56–8–3 provides:

   The rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent annually in the following cases:
   A. on money due by contract;
   B. on money received to the use of another and retained without the owner's consent expressed or implied; and
   C. on money due upon the settlement of matured accounts from the day the balance is ascertained.

6. Section 56–8–4(B) provides:

   The court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering among other things:
   (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
   (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

Prejudgment interest is awarded as a matter of right only when a party has breached a duty to pay a definite sum of money or "the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices." *Smith v. McKee*, 116 N.M. 34, 36, 859 P.2d 1061, 1063 (1993) (quoting *Kueffer v. Kueffer*, 110 N.M. 10, 12, 791 P.2d 461, 463 (1990)).

■ In cases falling under Section 56–8–3, where the amount owed is not fixed or readily ascertainable, the trial court may in its discretion award prejudgment interest of not more than fifteen percent. *Aztec Well Servicing Co. v. Property & Casualty Ins. Guar. Ass'n*, 115 N.M. 475, 486, 853 P.2d 726, 737 (1993); *see also Smith*, 116 N.M. at 36, 859 P.2d at 1063 ("An award of prejudgment interest is committed to the sound discretion of the trial court, except when such interest should be awarded as a matter of right.").

■ In past cases we have recognized that the trial court must consider the equities in each case before awarding prejudgment interest pursuant to Section 56–8–3, even when interest is otherwise awardable as a matter of right. *Shaeffer*, 95 N.M. at 188, 619 P.2d at 1232; *see also Bellet v. Grynberg*, 114 N.M. 690, 693, 845 P.2d 784, 787 (1992) (considering equities of award of prejudgment interest); *Mascarenas v. Jaramillo*, 111 N.M. 410, 414–15, 806 P.2d 59, 63–64 (1991) (reversing trial court's denial of prejudgment interest because court did not make findings on equities). When a plaintiff is entitled to prejudgment interest as a matter of right, the burden rests on the defendant to demonstrate a sufficient basis for denying such an award. *Ranch World of N.M., Inc. v. Berry Land & Cattle Co.*, 110 N.M. 402, 404, 796 P.2d 1098, 1100 (1990). However, when the amount owed is fixed or readily ascertainable, "prejudgment interest [under Section 56–8–3] generally should be awarded absent peculiar circumstances." *Id.*

Section 56–8–4(B) provides for prejudgment interest from the date of filing of the complaint, not as damages, but as a management tool or penalty to foster settlement and prevent delay in all types of litigation. *See Lucero v. Aladdin Beauty Colleges, Inc.*, 117 N.M. 269, 272, 871 P.2d 365, 368 (1994) (stating that discretionary award of prejudgment interest is allowed in all cases); *Southard v. Fox*, 113 N.M. 774, 777, 833 P.2d 251, 254 (Ct.App.1992) (holding that § 56–8–4(B) permits award of prejudgment interest in personal injury cases). While the purpose of Section 56–8–3 is to compensate the plaintiff for damages resulting from loss of use of the funds in cases where money is due by contract, received to the use of another, or due on settlement of matured accounts, Section 56–8–4(B) helps ease the burden on our crowded court system by fostering settlement and preventing delay. *Southard*, 113 N.M. at 778, 833 P.2d at 255. Under Section 56–8–4(B), the trial court is given discretion to award prejudgment interest, but only after considering, among other things, whether the plaintiff was the cause of unreasonable delay and whether the defendant made a reasonable and timely offer of settlement. *Id.* at 776, 833 P.2d at 253.

■ Colucci contends that Section 56–8–4(B) applies to the present case and that therefore an award of prejudgment interest was in the trial court's discretion. Our review of the facts has shown that Colucci received $12,256.31 from the Bank by virtue of a mistaken payment. The Bank realized its mistake and sought return of the money. Section 56–8–3(B), allowing prejudgment interest in the case of "money received to the use of another and retained without the owner's consent expressed or implied," applies under these circumstances. *See Kueffer*, 110 N.M. at 12–13, 791 P.2d at 463–64 (applying § 56–8–3(B)). Colucci retained and had the use of the Bank's money without its consent; the Bank was therefore entitled (absent countervailing equities) to an award of prejudgment interest at a rate of not more than fifteen percent. Because Colucci breached a duty to pay a definite sum of money, the Bank should have been awarded prejudgment interest as a matter of right (absent countervailing equities). *See Smith*, 116 N.M. at 36, 859 P.2d at 1063.

■ The trial court did not offer any explanation for its denial of prejudgment interest. The defendant has the burden to

demonstrate a sufficient basis for denial of prejudgment interest when Section 56-8-3 applies and the amount owed is ascertainable with reasonable certainty. *See Ranch World,* 110 N.M. at 404, 796 P.2d at 1100. In the absence of any findings by the trial court to justify its denial of prejudgment interest, we hold that the denial was an abuse of discretion (again, assuming there were no countervailing equities). *See id.* Accordingly, we remand to the trial court for consideration of the question whether any equities dictate that the Bank should not receive what we have held it is otherwise entitled to as a matter of right—prejudgment interest, at a rate also to be determined in the court's discretion.

With respect to the rate of interest on an award of prejudgment interest under Section 56-8-3, we hold that the statute fixes the *maximum* rate (fifteen percent per annum), but does not specify the rate to be awarded in all cases. In many—perhaps most—cases, the claimant will be entitled to prejudgment interest at the fifteen-percent rate; and many of our cases have held that prejudgment interest, in the particular cases, was to be awarded "at the statutory rate." *See, e.g., Bellet,* 114 N.M. at 691, 845 P.2d at 785; *Economy Rentals,* 112 N.M. at 762, 819 P.2d at 1320; *Mascarenas,* 111 N.M. at 415, 806 P.2d at 64; *Ranch World,* 110 N.M. at 404, 796 P.2d at 1110; *Kueffer,* 110 N.M. at 12, 791 P.2d at 463. Nevertheless, Section 56-8-3 is explicit that interest "*shall not be more than fifteen percent*" (emphasis added), so we think it clear that the rate of prejudgment interest to be awarded under this statute is to be determined by the trial court in its discretion, subject to the statutory maximum of fifteen percent.

## B. Postjudgment Interest

The Bank contends that the trial court erred by awarding it postjudgment interest calculated at a variable rate equal to the rate paid by the Bank to the Federal Reserve Bank for funds borrowed. We agree that the court erred by awarding a variable rate of postjudgment interest. Postjudgment interest on judgments and decrees for payment of money is mandatory and accrues at the statutory rate from the date of entry of judgment, unless the judgment is based on a written instrument bearing a different rate. NMSA 1978, § 56-8-4(A) (Repl.Pamp.1986);[7] *Candelaria v. General Elec. Co.,* 105 N.M. 167, 176, 730 P.2d 470, 479 (Ct.App.) (postjudgment interest is mandatory under § 56-8-4(A)), *cert. quashed,* 105 N.M. 111, 729 P.2d 1365 (1986). The judgment in this case was not rendered on a written contract, and therefore postjudgment interest should have been calculated at the statutory rate of fifteen percent in effect at the time the complaint was filed. *See Hillelson v. Republic Ins. Co.,* 96 N.M. 36, 38, 627 P.2d 878, 880 (1981) (statute governing interest is statute in effect at time case is filed).

## IV. CONCLUSION

We hold that there was substantial evidence to support the trial court's findings and judgment that Colucci was unjustly enriched at the Bank's expense and that he should make restitution. We reverse the trial court on its failure to award prejudgment interest and on its award of post-

---

7. This version of Section 56-8-4(A), in effect at the time the complaint in this case was filed, provided: "Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of fifteen percent per year, unless the judgment is rendered on a written instrument having a different rate of interest, in which case interest shall be computed at the rate specified in the instrument."

The statute was amended, effective June 18, 1993, to read: "Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of eight and three-quarters percent per year, unless the judgment is rendered on a written instrument having a different rate of interest, in which case interest shall be computed at a rate no higher than specified in the instrument or the judgment is based on tortious conduct, bad faith, intentional or willful acts, in which case interest shall be computed at the rate of fifteen percent." 1993 N.M. Laws, ch. 112, § 1 (compiled as § 56-8-4(A) (Cum.Supp.1993)). The current statute thus sets two different rates for postjudgment interest, depending on the nature of the judgment, and continues to allow for the contract on which the judgment is based to set its own rate of postjudgment interest. In any event, an award of postjudgment interest is mandatory and is to be computed at the statutory rate.

judgment interest at a variable rate and remand for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.