**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 1 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

D.J. SIMMONS INC.,

        Plaintiff-Appellee,

v.

F. BRIAN BROADDUS; B/R
ENERGY PARTNERS, INC.,

        Defendants-Appellants.

No. 03-2010
(D.C. No. CIV-99-1105-JP/LFG)
(D. N.M.)

PHOENIX ENERGY CONSULTING
SERVICES, INC.,

        Intervenor-Appellant

D.J. SIMMONS INC.,

        Plaintiff-Appellant-
        Cross-Appellee,

v.

F. BRIAN BROADDUS; B/R
ENERGY PARTNERS, INC.,

        Defendants-Appellees-
        Cross-Appellants,

No. 03-2024
(D.C. No. CIV-99-1105-JP/LFG)
(D. N.M.)

PHOENIX ENERGY CONSULTING
SERVICES, INC.,

     Intervenor-Appellee-
     Cross-Appellant.


D.J. SIMMONS INC.,

     Plaintiff-Appellee,

v.

F. BRIAN BROADDUS; B/R
ENERGY PARTNERS, INC.

     Defendants-Appellants,


PHOENIX ENERGY CONSULTING
SERVICES, INC.,

     Intervenor-Appellant.

No. 03-2041
(D.C. No. CIV-99-1105-JP/LFG)
(D. N.M.)


**ORDER AND JUDGMENT** *

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

-2-

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

After a bench trial, the district court determined that defendants B/R Energy Partners, Inc., Phoenix Energy Consulting Services, Inc., and F. Brian Broaddus [hereinafter "B/R Energy"] are jointly and severally liable to plaintiff D.J. Simmons, Inc., an oil and gas producer, for past-due payments for natural gas liquids B/R Energy purchased from Simmons under contracts executed in 1995, 1996, and 1998. In a subsequent order, the district court denied Simmons' request for prejudgment interest due under the contracts but awarded postjudgment interest on the total judgment at a rate provided in the parties' contracts. In a third order, the court modified the postjudgment interest rate and reconsidered its denial of prejudgment interest. On reconsideration, the court awarded interest on payments due under the 1995 contract, but again denied prejudgment interest on payments due under the other two contracts.

In appeal No. 03-2010, B/R Energy appeals from the award of contract damages in the district court's November 8, 2002, order. In appeal No. 03-2024,

-3-

Simmons appeals from the court's January 7, 2003, denial of prejudgment interest on the 1996 and 1998 contracts. In appeal No. 03-2041, B/R Energy cross-appeals from the award of prejudgment interest on the 1995 contract. The three appeals have been consolidated, and our jurisdiction arises under 28 U.S.C. § 1291.

With respect to the award of contract damages, we conclude that the district court did not err in its utilization of price terms or in disallowing a marketing fee to B/R Energy. We further conclude that the district court should have enforced the parties' agreement for prejudgment interest on past-due amounts on all three contracts. Therefore, we affirm in part and reverse in part.

## I. Standard of review

We review questions of law *de novo*. We review findings of fact under a clearly erroneous standard. *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998) (quotation omitted). The interpretation of a contract is a legal question. *See K&V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 497 (10th Cir. 2002). In resolving the legal issues in this contract action that was removed to

-4-

federal court, we apply the substantive law of New Mexico. *See Sanpete Water Conservancy Dist. v. Carbon Water Conservancy Dist.*, 226 F.3d 1170, 1178 (10th Cir. 2000).

## II.  Relevant facts

We need not repeat the thorough recitation of facts set forth in the district court's November 8, 2002, order except as the facts relate to the issues on appeal. B/R Energy purchased all of Simmons' gas output at the wellheads, where it was metered and then transported to the Chaco processing plant, which is owned by El Paso Field Services [1] (EPFS).  Simmons agreed that costs for processing and transportation would be deducted from the price B/R Energy paid for Simmons' gas.  At Chaco, the gas was separated into "residue gas" and various liquid gas components.  Simmons was to be paid based on its yearly contract price for each component, times the number of MMBtus [2] for the various components, minus the processing, transportation, and other fees set forth in the contract.  B/R Energy contracted separately with various companies who were purchasing the residue gas from B/R Energy for the transportation and processing of the gas.  Those contracts were confidential.

---

[1]     Because it is undisputed that B/R Energy and Simmons agreed to a flat-rate processing fee for all gas produced in 1996-1998, the purported Chaco-Blanco split is not relevant to the issues raised on appeal.  We need not discuss it.

[2]     "MMBtu" means 1,000,000 British Thermal Units.

The 1995 purchase contract did not specify what the processing fees were or how they would be determined, but Simmons admitted that the parties agreed that Simmons would pay for the processing fees. Therefore, the district court found that B/R Energy was entitled to off-set its actual processing costs, whether they were in the form of a flat rate per MMBtu or in the form of an amount of liquids retained by the processing plant in lieu of charging a processing fee, against the money it owed to Simmons.

In the 1996 and 1998 contracts, however, Simmons and B/R Energy expressly agreed that Simmons would pay a flat-rate per MMBtu for processing its gas based on the total amount of gas that was metered, no matter what the actual processing cost was to B/R Energy. Accordingly, B/R Energy reduced the gross amount due to Simmons by the flat-fee processing cost. In addition, the contracts specifically provided that Simmons would receive credit for 100% of its liquid gas production.

In 1998 Simmons discovered that the reports it received from B/R Energy indicated that Simmons was not being paid for about 40% of the liquids it was producing. Simmons questioned whether B/R Energy was double charging for processing by paying both the flat-rate processing fee and by B/R Energy not reporting or paying for the amount of liquids that Chaco retained in lieu of charging B/R Energy a processing fee. Documentary evidence obtained in

discovery established that Simmons was not paid for 39% of its liquid production even though it had already paid for processing through offset by the flat-rate fee. Thus, the district court found that B/R Energy had double-charged Simmons for processing, thereby breaching its 1996 and 1998 contracts to charge only a flat rate per MMBtu for processing.

The district court also accepted Simmons' expert's testimony that B/R Energy had further failed to pay the proper base prices for liquid gas components under all three contracts. The court concluded that B/R Energy owed Simmons $716,806 on the 1996 contract and $489,029 on the 1998 contract, and that B/R Energy had underpaid for liquids in its 1995 contract in the amount of $130,507. The court then reduced the total amount owed by $54,750 because of a mistake Simmons' expert admitted he had made in his audit.

The district court rejected B/R Energy's argument that it was entitled to recover marketing fees on all three contracts. It found that neither the 1995 nor the 1996 contracts referenced such fees, and that the 1998 contract provided for payment of marketing fees only if they were assessed to B/R Energy, but no third party had in fact assessed any marketing fees. The court later awarded prejudgment interest on the damages arising from the breach of the 1995 contract and postjudgment interest on the entire damage award.

## III. Motion to dismiss

We first address Simmons' argument that two of the defendants' appeals must be dismissed because Broaddus and Phoenix Energy confessed judgment and waived all rights to appeal on any ground in a pre-trial stipulation designed to resolve certain of Simmons' claims. *See* B/R Energy's App., Vol. I at 317. The stipulation provided:

> F. Brian Broaddus and the Phoenix Energy Consulting Services, Inc., Defendants in this action, hereby stipulate and confess judgment as follows: that each is jointly and severally liable with B/R Energy Partners, Inc., for any and all damages of any kind, interest and cost, if any, which this Court may enter against B/R Energy Partners, Inc., in the final judgment in this action, and hereby expressly waive all rights to appeal said final judgment on any grounds.

*Id.* Read in context, the stipulation clearly foreclosed only an appeal of the issue of joint and several liability. Simmons' motion to dismiss the appeals is denied.

## IV. Appeal No. 03-2010

**A. Retention versus flat-rate fee for processing**. In appeal No. 03-2010, B/R Energy first argues that the district court erred by including "unwritten price terms" in the 1996 and 1998 contracts that required B/R Energy "to pay Simmons for liquid gallons that were never available" to B/R Energy. Essentially it contends that it was obligated to pay Simmons only for the liquid gallons remaining after Chaco took 39% of the liquid production notwithstanding the fact that B/R Energy had already charged a processing fee. B/R Energy's

-8-

Opening Br. at 1, 19. It is undisputed that Chaco retained 39% of the liquid gallons produced *in lieu of* charging B/R Energy a processing fee. As the district court noted, B/R Energy offered, and Simmons selected, an option under the 1996 and 1998 contracts specifically providing for a flat-rate processing fee per MMBtu on all gas that Chaco processed. Simmons paid that fee. Simmons rejected B/R Energy's alternative option of paying for processing through retention of a percentage of production. B/R Energy claims that the court erroneously ignored the commercial context of the contracts. It claims that, if marketers paid producers for liquid gallons the marketer did not receive, the marketer would go out of business. This argument ignores the fact that B/R Energy had already been reimbursed for processing and had no right to double charge for processing by also passing along the retention loss to Simmons. *See* B/R Energy's App., Vol. II at 493-94, 498-99. There was no need for the district court to rely on or discuss trade usage or custom when the contract specifically provided for a particular type of processing fee. The district court did not err in requiring B/R Energy to pay Simmons the contract price for all of its liquid production.

**B. Average 30-day pricing versus 5-day pricing.** The district court also found that the "evidence establishes that Simmons was underpaid for [its] liquids" in the 1995 contract, B/R Energy's App., Vol. I at 334. The court accepted

Simmons' expert's testimony regarding proper pricing to calculate breach-of-contract damages for all three contracts. B/R Energy briefly argues that the district court erred in requiring B/R Energy to pay for liquid gallons based on 30-day OPIS average pricing instead of on the 5-day OPIS average price that EPFS ordinarily paid or on the 10-day OPIS average price that Simmons currently receives from a different gas purchaser. B/R Energy's Opening Br. at 41-42. The parties' 1996 contract provided:

> Liquid credits: Natural gas liquids pricing will be based upon EPFS OPIS non-TET Mt. Belvieu averages per component . . . .
> Recoveries are based upon current mole percent averages provided by EPFS . . . .

B/R Energy's App., Vol. I at 251. The 1998 contract provided:

> NGL [natural gas liquid] Pricing: Prices paid for component gallons of NGL products shall be based on Mt. Belvieu OPIS averages. . . .

*Id.* An EPFS representative testified that "the industry standard of OPIS [is] that you pay on the OPIS average. The OPIS [average] is a 30-day average." *Id.* Vol. IV at 1536. A Simmons representative testified that he believed that all contracts were for OPIS "30-day average because the term of [Simmons'] contract was a year and [it] was paid monthly" *id.* Vol. III at 826, and because other price references in the parties' contract were to a monthly publication, *id.* at 827. Simmons' expert testified that, when a gas contract

> just says Mt. Belvieu averages, then it would be a 30-day average. Parties can negotiate and contract and use one day or five day or ten

-10-

day averages. [In] the absence of that specific language, then the proper pricing would be the pricing for the entire [30-day] time period. So if I have a May 2002 production, I would want to have an average for all 31 days in May, not just an average for one day or five days.

*Id.* Vol. II at 474-75. The court also based its finding of improper pricing on the expert's testimony that B/R Energy had not used the correct mole percent recoveries provided by EPFS, *see id.* at 496 and 500-01, and had improperly deducted marketing fees, *id.* at 515-16. We conclude that the district court did not err in accepting Simmons' expert's testimony and that substantial evidence supports the court's findings.

**C. Marketing fee.** B/R Energy argues that the district court erred in disallowing a marketing fee as contrary to the parties' intent and to trade usage. Prior to 1995, B/R Energy was simply a marketer, selling Simmons' gas on Simmons' behalf to purchasers. B/R Energy was paid a marketing fee for the sales by the purchaser, which was passed on to Simmons. After 1995, however, B/R Energy was the actual purchaser–not just the marketer–of Simmons' gas. The 1995 and 1996 contracts did not mention a charge for marketing fees. B/R Energy's App., Vol. IV at 1426-27. The 1998 contract provided for Simmons to pay only for any "marketing fees assessed." *Id.*, Vol. I at 251. B/R Energy does not contest the district court's finding that "no marketing fees were assessed to [B/R Energy]." *Id.* at 336. This unchallenged finding is sufficient to support the

-11-

court's conclusion that B/R Energy is not entitled to recover fees that it was not charged.

**D. Simmons' arguments on rulings from which it did not cross-appeal.** Much of Simmons' response brief in this appeal is dedicated to arguing that the district court erred in not awarding it enough damages on the 1995 contract. Because Simmons did not cross-appeal on this issue from the district court's November 8, 2002, order awarding damages, we will not consider its arguments. *See Savage v. Cache Valley Dairy Ass'n,* 737 F.2d 887, 889 (10th Cir. 1984) (per curiam) ("the filing of a timely cross-appeal is mandatory and jurisdictional"); *Hansen v. Director, OWCP,* 984 F.2d 364, 367 (10th Cir. 1993) (noting rule that appellee may not attack the district court's decision with a view toward enlarging its own rights or lessening the rights of its adversary absent a cross appeal); *Housing Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1195 (10th Cir. 1991) ("An appellee may present an argument on appeal only if it does not enlarge the rights conferred by the original judgment."); *cf. Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1227-28 (10th Cir. 1997) (holding that appellee's jurisdictional issue may be considered without a cross-appeal).

## V. Appeals No. 03-2024 and 03-2041

**A. Denial of prejudgment interest.** Each of the parties' gas purchase contracts provided for the payment of 18% per annum interest on unpaid amounts due under the gas purchase contracts. *See* Simmons' App., Vol. III at 1079, 1101, 1119. Simmons urged enforcement of these interest agreements as part of its complaint for contract damages. Its expert included the contract rate of interest in calculating the total damages Simmons sustained from B/R Energy's breach. The district court did not expressly adopt this part of the expert's testimony or Simmons' proposed findings on the issue, but it awarded a damages amount "together with interest . . . as allowed by law" in its November 8, 2002, judgment. *Id.*, Vol. II at 667. Simmons moved for clarification or reconsideration by a motion to amend the judgment, arguing that it was entitled to interest as a matter of right, asking the court to specify the amounts of prejudgment and postjudgment interest, and submitting a calculation for contractual interest based on the court's damage award. In so moving, Simmons also cited an inapplicable but analogous New Mexico statute which provides, "*in the absence of a written contract fixing a different rate*," for imposition of not more than a fifteen percent interest rate for money due by contract as a matter of right. *Id.* at 672 (quoting N.M. Stat. Ann. § 56-8-3) (emphasis added). B/R Energy responded by arguing that Simmons was not entitled to recover prejudgment interest because the amounts due were not

"reasonably ascertainable." *See id.* at 700. In its order of November 29, 2002, the district court agreed with B/R Energy's arguments, citing a New Mexico Supreme Court case in which the court held that prejudgment interest should be awarded under section 56-8-3 as a matter of right when "'a party has breached a duty to pay a definite sum of money or the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices.'" *Id.* at 688 (quoting *Sunwest Bank of Albuquerque, N.A. v. Colucci*, 872 P.2d 346, 351 (N.M. 1994) (further quotation omitted)). The district court also noted that *Colucci* held that, "[w]hen the payment due under the contract is not fixed or readily ascertainable, a district court may, in its discretion, award prejudgment interest." Simmons' App., Vol. II at 688.

In denying Simmons' request for prejudgment interest, the district court noted that the gas purchase contracts expressly provided for a different rate of interest than provided in section 56-8-3, but concluded that Simmons' right to recover prejudgment interest was dependent on whether the payments due were "readily ascertainable from the contract," and that "the amount due was not readily ascertainable at the time of the breach." *Id.* at 690.

Simmons then moved for a new trial, again on the issue of its right to recover prejudgment interest. It argued that the amounts due were clearly able to

be calculated with a mathematical formula set out in the contracts at the time of B/R Energy's breach, using the published indexes and fees agreed upon by the parties and the volumes reported by El Paso Field services, which were reported to B/R Energy on a monthly basis. And it argued that it was entitled to the interest provided in the gas purchase contract on unpaid amounts as *eo nomine* damages regardless of the statutory rates found in section 56-8-3.

The district court reconsidered its November 29, 2002, order and held that, because Simmons had become entitled to breach-of-contract damages on the 1995 contract solely because B/R Energy used the wrong price in calculating the amount due Simmons, the damages were ascertainable with reasonable certainty and prejudgment interest should be awarded at the interest rate provided in the contract. *Id.* at 722. The court upheld its prior order denying prejudgment interest on the 1996 and 1998 contracts.

On cross-appeal, B/R Energy continues to argue that the amount it owed Simmons was not easily ascertainable and, therefore, no prejudgement interest should have been awarded on any of the three contracts. B/R Energy continues to ignore the distinction between contractual and statutory rights to interest.

> Interest is classified as contract or conventional interest, judgment interest, and prejudgment interest. Interest prescribed by contract may be recovered according to the contract terms, subject to usury and other regulatory statutes.
> . . .

> So far as valid, the contract establishes the parties' rights, including rights to interest, its rate, and its computation. So contractual provisions for interest authorize the award of interest . . . when the law would not do so in the absence of a contract.

D. Dobbs, H ANDBOOK ON  LAW OF  REMEDIES , 245-46 (2d Ed. 1993);   *see also* RESTATEMENT OF  CONTRACTS  § 337(a) (cmt. a) (1932) ("In cases where it is promised, interest is an agreed compensation for consideration received; and it is payable because it is promised and not as reparation for a previous breach of duty."). B/R Energy makes much of the fact that Simmons' expert had to amend his damage calculations three times based on information received during discovery, reasoning that the amount due was therefore not reasonably ascertainable under section 56-8-3. As mentioned      *supra*, however, section 56-8-3, by its own terms applies only in those actions on a contract where the contract is silent as to prejudgment interest.

The undisputed fact remains that the 1996 and 1998 contracts expressly provided that Simmons was to receive credit for 100% of its liquid gas production. The district court's findings that B/R Energy underpaid for liquid gallons based on the price terms of the contract is supported by substantial evidence. B/R Energy expressly agreed to pay interest on amounts due. Thus, interest began accruing at the contract rate on the amounts due the first month of B/R Energy's failure to pay the amount due under the contracts. We conclude that the district court erred in not enforcing the parties' agreement that B/R

-16-

Energy would pay 18% per annum interest on all unpaid amounts due under the 1996 and 1998 gas purchase contracts. *See United Props. Co. v. Walgreen Props., Inc.*, 82 P.3d 535, 539 (N.M. Ct. App. 2003) ("When a contract was freely entered into by parties negotiating at arm's length, the duty of the courts is ordinarily to enforce the terms of the contract which the parties made for themselves." (quotation omitted)); *Nearburg v. Yates Petroleum Corp.*, 943 P.2d 560, 571 (N.M. Ct. App. 1997) (citing New Mexico Supreme Court case for the premise that ("[a] court should . . . not interfere with the bargain reached by the parties unless the court concludes that the policy favoring freedom of contract ought to give way to one of the well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality," and enforcing agreement to pay amounts that were not ascertainable at the time the agreement was made).

In appeal No. 03-2010, we AFFIRM the judgment on contract damages in favor of Simmons. In appeal No. 03-2024, we REVERSE the district court's denial of prejudgment interest on the 1996 and 1998 contracts and REMAND for further proceedings. In appeal No. 03-2041, we AFFIRM the award of prejudgment interest on the 1995 contract.

Entered for the Court

Monroe G. McKay
Circuit Judge