This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**DONALD ROMERO and THERESA ROMERO,**

Plaintiffs-Appellees,

**No.    31,549**

**PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Barbara J. Vigil, District Judge**

O'Friel & Levy, P.C.
Daniel J. O'Friel
Aimee Bevan
Santa Fe, NM

for Appellees

Simone, Roberts & Weiss, P.A.
Meena H. Allen
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

{1}	The district court ordered Defendant-Appellant Progressive Northwestern Insurance Company (Progressive) to pay pre-judgment interest calculated from the date of an automobile accident involving an uninsured motorist in which its insured, Plaintiff-Appellant Donald Romero (Romero), was injured. It also awarded attorney fees to Romero based on its determination that Progressive's denial of coverage was unreasonable. Concluding that the district court did not err in determining that pre-judgment interest and attorney fees were warranted, we affirm those decisions. However, because we disagree with the way the district court calculated both pre-judgment interest and attorney fees, we vacate the amounts awarded and remand for recalculation of both.

**BACKGROUND**

{2}	Romero was seriously injured in an accident with an uninsured motorist on September 23, 2006. After multiple surgeries and rehabilitation, Romero is permanently disabled. Romero carried insurance with Allstate Insurance Company (Allstate) (primary insurer) and Progressive (secondary insurer). The Allstate policy covered four vehicles and had liability limits of $100,000 per vehicle and uninsured motorist (UM)[1] limits of $25,000 per vehicle. The Progressive policy covered three

---

[1]As used in this Opinion, "UM" includes both uninsured and underinsured motorists. *See Brooks v. State Farm Ins. Co.*, 2007-NMCA-033, ¶ 3, 141 N.M. 322, 154 P.3d 697.

vehicles and had liability limits of $100,000 per vehicle and UM limits of $50,000 per vehicle. Allstate paid Romero $100,000, the result of stacking the undisputed UM coverage of $25,000 per vehicle and Progressive paid Romero $150,000, the result of stacking the undisputed UM coverage of $50,000 per vehicle. Romero, together with Tracey and Rosemary Jordan, filed suit against Allstate, arguing that Allstate owed him UM coverage equal to his liability coverage of $100,000 per vehicle because Allstate had "failed to obtain a valid rejection of [UM] coverage equal to the limits of liability." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 13, 149 N.M. 162, 245 P.3d 1214. Alleging a similar failure by Progressive, Romero filed a declaratory judgment action against Progressive on the issue of whether the UM coverage was $100,000 per vehicle rather than $50,000 per vehicle. Romero was successful in both suits in the district court, Court of Appeals, and Supreme Court.[2]

{3}     After the *Jordan* decision was filed and medical bills provided to Progressive, Progressive paid Romero an additional $150,000. Romero then filed a motion for pre-judgment interest and attorney fees, which was granted. Progressive was ordered to

---

[2]*Romero v. Progressive Nw. Ins. Co.*, 2010-NMCA-024, 148 N.M. 97, 230 P.3d 844, *aff'd sub nom. Jordan*, 2010-NMSC-051 was consolidated in the Supreme Court with *Jordan v. Allstate Ins. Co.*, 28,638, 2009 WL 6634039 (N.M. Ct. App. Oct. 29, 2009), *aff'd* 2010-NMSC-051, and *Lucero v. Trujillo*, 29,859, 2010 WL 3968651 (N.M. Ct. App. Jan. 7, 2010), *aff'd sub nom. Jordan*, 2010-NMSC-051. *See Jordan*, 2010-NMSC-051, ¶ 13.

pay $96,404.96 in pre-judgment interest pursuant to NMSA 1978, Section 56-8-3 (1983) and $129,825 in attorney fees pursuant to NMSA 1978, Section 39-2-1 (1977), as well as post-judgment interest at a rate of eight and three-quarters percent per annum pursuant to NMSA 1978, Section 56-8-4(A) (2004), until paid in full. Progressive appeals.

**DISCUSSION**

{4}     Progressive argues that the district court erred in awarding both pre- and post-judgment interest and attorney fees. We address these arguments in turn.

**Pre- and Post-Judgment Interest**

{5}     "Pre[-]judgment interest is awarded as a matter of right only when a party has breached a duty to pay a definite sum of money or the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices." *Sunwest Bank of Albuquerque, N.A. v. Colucci*, 117 N.M. 373, 378, 872 P.2d 346, 351 (1994) (internal quotation marks and citation omitted). When pre-judgment interest is a matter of right, we examine the district court's findings to determine if they are supported by substantial evidence. *See Kueffer v. Kueffer*, 110 N.M. 10, 12, 791 P.2d 461, 463 (1990).

{6}     Here, the district court found that "[p]re-judgment interest is due as a matter of right since the amount due under the contract was ascertainable from the day of the

accident." Thus, its decision was based on the ascertainability of the amount owed, not on whether Progressive breached a duty to pay a definite sum. Nevertheless, Progressive argues that pre-judgment interest was inappropriate because either (1) its position that UM coverage was limited to $150,000 was reasonable based on pre-*Jordan* case law and, therefore, it did not breach the contract when it denied that UM coverage was equal to the liability limits or (2) the amount owed to Romero was not ascertainable on September 23, 2006.

{7} We first examine whether Progressive's denial of equalized coverage was a breach of the contract. In *Jordan*, the Supreme Court "h[e]ld that a rejection of [UM] coverage equal to the liability limits in an automobile insurance policy must be made in writing and must be made a part of the insurance policy that is delivered to the insured." *Jordan*, 2010-NMSC-051, ¶ 2. It affirmed this Court's holding that the "proper remedy . . . [for a failure to meet these requirements] is reformation of [Romero's] automobile liability policies to provide [UM] coverage equal to the liability limits." *Id.* ¶ 36.

{8} The *Jordan* Court took pains to make clear that its holding was not new. *See id.* ¶ 27. In analyzing whether the holding should be retroactive or prospective, the Court stated that its decision did not "establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an

issue of first impression whose resolution was not clearly foreshadowed." *Id.* (internal quotation marks and citation omitted). It also stated that "[its] holding [wa]s based on settled principles articulated in twenty years of [UM] jurisprudence." *Id.* Finally, it stated that insurers' "historical" understanding of regulations related to UM coverage was "unreasonable in light of the plain language of [NMSA 1978,] Section 66-5-301 [(1983)] and 13.12.3.9 NMAC [(5/14/04)]." *Id.* Regulation 13.12.3.9 requires that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 . . . must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." It is evident from the Court's language that it was clear—even before the *Jordan* case—that proper rejection of UM coverage requires an explicit rejection in writing that is "made a part of the policy that is delivered to the insured." *Jordan*, 2010-NMSC-051, ¶ 19.

{9}     We disagree with Progressive's argument that *Jordan*'s holding rested on the holding in *Progressive Northwestern Insurance Company v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209—which was decided the same day—and, therefore, the law on UM coverage was not "well settled." In *Weed Warrior*, the Court construed Section 66-5-301 as a matter of first impression. *Id.* ¶¶ 4, 5. It determined "that Section 66-5-301 requires an insurer to offer UM[]

coverage in an amount equal to the liability limits of the policy and that the choice of the insured to purchase any lower amount functions as a rejection of that maximum amount of coverage statutorily possible." *Id.* ¶ 15. The Court's use of the phrase "first impression" in this context means only that it was the first opportunity for the Court to construe the statute, not that its interpretation of the statute was itself a new rule. *See id.* ¶ 4. Construction of statutory language is by definition an exercise in determining what the Legislature intended at the time the statute was enacted or amended; thus, a Court's construction resolves disputes over what the statutory language has *always* meant. *See Key v. Chrysler Motors Corp.*, 1996-NMSC-038, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 ("In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background."). In addition, because the Court did not indicate otherwise, we presume that the *Weed Warrior* holding applies retroactively. *See Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 398, 881 P.2d 1376, 1383 (1994).

{10}     We conclude that both *Weed Warrior* and *Jordan* rested on existing law that should have put Progressive on notice of the requirements for rejection of UM coverage equal to the liability limits of the policy. *See Jordan*, 2010-NMSC-051, ¶ 27. Failure to meet these requirements requires reformation of the contract to

provide UM coverage equal to the liability limits. *Id.* ¶ 36. Progressive's denial of the equalized coverage, therefore, was a breach of the contract.

{11} Progressive's reliance on *State Farm Mutual Automobile Insurance Company v. Barker*, 2004-NMCA-105, ¶ 13, 136 N.M. 211, 96 P.3d 336 is misplaced. Progressive argues that like that case, it was not obligated to pay Romero's claim for $300,000 until Romero demonstrated that he was "legally entitled to recover" that amount and consequently, there was no breach of the contract when it refused to pay. In *Barker*, the Court held that State Farm did not breach its contract when it refused to pay Barker's claim until after the parties' dispute over the amount of the damages was arbitrated pursuant to an arbitration clause in the contract. *Id.* ¶ 12. The issue before the arbitrator was whether a stroke suffered several days after an auto accident with an uninsured motorist was proximately caused by the accident and, therefore, fell within the insurer's coverage of the accident. *Id.* Thus, the issue there was whether Barker was "legally entitled to recover" from the uninsured motorist, i.e., was the uninsured motorist liable for his injuries? *Id.* ¶ 13 (stating that "legally entitled to recover" means there is a "determination of liability . . . made by legal means" (internal quotation marks and citation omitted)). Here, Progressive does not dispute that the uninsured motorist caused the accident leading to Romero's injuries. We conclude that *Barker* is inapposite to this case.

8

**{12}** We also conclude that two other cases on which Progressive relies, *Bird v. State Farm Mutual Automobile Insurance Co.*, 2007-NMCA-088, 142 N.M. 346, 165 P.3d 343 and *Abeita v. Northern Rio Arriba Electric Cooperative*, 1997-NMCA-097, 124 N.M. 97, 946 P.2d 1108, are unavailing not least because they address pre-judgment interest under Section 56-8-4, which "allows pre[-]judgment interest in the discretion of the court after the court considers, among other things, whether the plaintiff was the cause of unreasonable delay in the adjudication of his or her claims and whether the defendant had previously made a reasonable and timely offer of settlement." *Colucci*, 117 N.M. at 377, 872 P.2d at 350. The district court here awarded pre-judgment interest under Section 56-8-3 as a matter of right, not pursuant to Section 56-8-4. In addition, although Progressive argues that "the same logic [applied in those cases] should apply here" because those cases "presented legal issues which were a matter of first impression in New Mexico[,]" we disagree. Even if those cases dealt with novel legal issues, we have determined that the legal issues here were clear before the accident. *Bird* and *Abeita* are not applicable to this case. **{13}** Progressive's second argument is that the district court erred in its finding that "the amount due under the contract was ascertainable from the day of the accident." Based on this finding, the district court ordered Progressive to pay pre-judgment interest beginning on the day of the accident. Progressive does not appear to challenge the finding that the amount

9

due was ascertainable. This position is consistent with Progressive's payment of the second $150,000 "[o]nce Progressive received the medical records and bills following the . . . *Jordan* [decision]." Instead, it argues that "there was no evidence that $300,000 was due to [Romero] that day." We understand this argument to mean that pre-judgment interest, if awarded, should have dated from the date Progressive was obligated to pay Romero's claim, rather than the date of the accident. We agree with Progressive that calculation of pre-judgment interest from the date of the accident was error in these circumstances.

{14} Pre-judgment interest is calculated beginning when the "claim[] accrued." *Gilmore v. Duderstadt*, 1998-NMCA-086, ¶ 39, 125 N.M. 330, 961 P.2d 175. Romero argues that his "claim accrued on the date it became reasonably clear that benefits were due under the contract" and that "Progressive had a duty to investigate the claim and make prompt payment of amounts due." We are not persuaded. We interpret use of the word "claim" in this context to mean a cause of action, not a claim for benefits. *See Brooks*, 2007-NMCA-033, ¶ 10 ("We conclude . . . that the 'claim being asserted' is the right to sue for breach of contract, not the right to make a claim under the contract."). Unless there is a specific date in the contract, "a cause of action for [UM] coverage begins to accrue when the insurance contract is breached." *Id.* The contract is breached when a claim for benefits is erroneously or wrongfully

10

denied. *Id.* ¶ 9 (including denial of a claim as a trigger for a cause of action); *Grynberg v. Roberts*, 102 N.M. 560, 563, 698 P.2d 430, 433 (1985) (stating that pre-judgment interest accrued from the dates that the defendants failed to pay amounts owed under contract)*; Hillelson v. Republic Ins. Co.*, 96 N.M. 36, 37, 627 P.2d 878, 879 (1981) ("Th[e] interest should have accrued from the date [the insurer] denied liability."); *Cf. Coseboom v. Marshall Trust*, 67 N.M. 405, 412-13, 356 P.2d 117, 121-22 (1960) (stating that when payer stops payment on a check, pre-judgment interest beginning on the "the date of the refusal of payment on the check" was appropriate). Here, the contract was breached when Progressive denied Romero's claim for UM coverage up to $300,000 contrary to law. Accordingly, the district court erred in awarding pre-judgment interest from the date of the accident.

**{15}** To the extent that Progressive argues that it could not have breached the contract before the Allstate coverage was exhausted, we conclude that under the facts of this case Progressive's status as secondary insurer is immaterial. *See State Farm Mut. Auto. Ins. Co. v. Safeco Ins. Co.*, 2013-NMSC-006, ¶ 11, 298 P.3d 452 ("The status of a [UM] insurer as primary or secondary determines which insurer must be the first to pay [UM] benefits. . . . [W]e [have] held that the primary [UM] insurer had to pay its policy limits before secondary [UM] insurers have to pay."). Progressive paid Romero $150,000 on March 30, 2007, after Allstate had paid $100,000 in

undisputed stacked UM coverage of $25,000 per vehicle. In its communication on March 30, 2007, Progressive stated, "It is Progressive's position that there are no additional funds available under the policy." Thus, Progressive did not assert that it was not obligated to pay until after the Allstate policy was exhausted. Rather, it denied any further liability under the policy. As discussed above, this position was incorrect.

{16}    In conclusion, the district court did not err in awarding Romero pre-judgment interest, but we remand for recalculation of the pre-judgment interest beginning on the date Progressive denied equalized UM coverage rather than the date of the accident. We find no error in the award of post-judgment interest consistent with Section 56-8-4(A). *Colucci*, 117 N.M. at 379, 872 P.2d at 352 ("Post[-]judgment interest on judgments and decrees for payment of money is mandatory and accrues at the statutory rate from the date of entry of judgment[.]").

**Attorney Fees**

{17}    Under the "American rule," the parties to a lawsuit are responsible for their own legal fees and costs. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450. One party may be required to pay the attorney fees and costs of another if agreed to by the parties or provided for by statute. *Id.* In New Mexico, Section 39-2-1 provides for attorney fees when the insured prevails in an

action based on any type of first party coverage against an insurer. It states, "In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney fees and costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim." *Id.* This provision encompasses three analyses: whether the insured prevailed in an action against the insurer, whether the insurer acted unreasonably, and what amount of attorney fees is reasonable. We review the district court's award of attorney fees for an abuse of discretion. *Bird*, 2007-NMCA-088, ¶ 27.

{18} Progressive concedes that Romero prevailed in an action against Progressive, but argues that "there was no finding by the district court that Progressive acted unreasonably in failing to pay the disputed $150,000." We disagree. Although the district court's findings do not use the word "unreasonable," it is clear that it analyzed the reasonableness of Progressive's conduct and found it lacking. The district court found that "[t]he law in the area was well-settled[;] [Romero was] forced to litigate this matter for over four (4) years[;] [Romero] prevailed at every level[; and] [Progressive's] decision to challenge [Romero's] entitlement was taken at its risk." Given the Supreme Court's holding in *Jordan* that the law of UM coverage was well-settled at the time of the accident, the district court's conclusion that Progressive's

13

conduct was unreasonable was not error. *Cf. Jordan*, 2010-NMSC-051, ¶ 27 (characterizing Progressive's understanding that regulations requiring rejection of UM coverage in writing were inapplicable to UM coverage in less than maximum amounts as "unreasonable").

{19} Nevertheless, we remand for recalculation of attorney fees. Section 39-2-1 permits the award of "reasonable" attorney fees. Romero requested attorney fees equal to the amount he had agreed to in the contingency fee agreement with his attorney: forty percent of the total amount recovered. The district court granted Romero's request for forty percent of $300,000 plus interest, or $129,825, stating in its findings that the requested amount was "reasonable." Other than the motion and contingency fee agreement, the record is devoid of evidence related to the attorney fees request.

{20} We have recognized two methods for the calculation of attorney fees: the percentage of recovery (POR) method and the lodestar method. *See Atherton v. Gopin*, 2012-NMCA-023, ¶ 7, 272 P.3d 700. The lodestar method, which "is ordinarily used in statutory fee-shifting cases because it provides adequate fees to attorneys who undertake litigation that is socially beneficial," is based on "a fee that approximates a reasonable hourly rate multiplied by the number of hours reasonably incurred in the representation." *Id.* (internal quotation marks and citation omitted).

14

"This value serves as a starting point for the calculation of a reasonable fee." *Id.* Whatever method is used, "the district court must assure that the fee awarded is reasonable . . . . by applying the . . . factors found in Rule 16-105 [NMRA]." *Rivera-Platte v. First Colony Life Ins. Co.*, 2007-NMCA-158, ¶ 83, 143 N.M. 158, 173 P.3d 765 (citation omitted); *see* Rule 16-105 cmt. 3 ("Contingent fees, like any other fees, are subject to the reasonableness standard of Paragraph A of this rule. In determining whether a particular contingent fee is reasonable, . . . a lawyer must consider the factors that are relevant under the circumstances."). These factors include, among others,

> the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; . . . the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; . . . the experience, reputation, and ability of the lawyer or lawyers performing the services; [and] whether the fee is fixed or contingent.

Rule 16-105. It appears from the record that the district court applied the POR method, since Romero presented no data that would support the lodestar method. It is unclear, however, how the district court applied that method. For instance, the district court did not articulate how it determined that the amount of the recovery on which the fees were based should be the total value of the UM coverage ($300,000), rather than the disputed amount over which the suit was filed ($150,000) nor did it indicate that it assessed any of the factors for reasonability in Rule 16-105.

"Meaningful review of the reasonableness of the present attorney fee award is not possible on the record and findings before us." *Rivera-Platte*, 2007-NMCA-158, ¶ 83. Finally, "[b]ecause award of attorney fees is properly a function of the district court rather than an appellate court, we decline to express an opinion as to the proper amount of attorney fees." *Id.* ¶ 82. We remand for reconsideration of attorney fees.

**CONCLUSION**

{21}    We affirm the district court's determination that Romero is entitled to pre-and post-judgment interest and attorney fees, but remand for recalculation of pre-judgment interest and reconsideration of attorney fees.

{22}    **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**J. MILES HANISEE, Judge**